**Herbert ADAMS, Appellant,**

v.

**KELLY DRILLING CO., Inc., et al.,
Appellees.**

**No. 17862.**

United States Court of Appeals
Fifth Circuit.

Jan. 15, 1960.

Rehearing Denied March 23, 1960.

Ernest A. Carrere, Jr., New Orleans, La., Kenneth Watkins, of Watkins & Talbot, Houma, La., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., of counsel, for appellant.

P. A. Bienvenu, Blake West, William L. Von Hoene, New Orleans, La., H. Minor Pipes, Houma, La., George Matthews, Bienvenu & Culver, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., of counsel, for appellees.

Before RIVES, Chief Judge, and HUTCHESON and CAMERON, Circuit Judges.

HUTCHESON, Circuit Judge.

Herbert Adams, plaintiff, brought suit against Kelly Drilling Company, Inc., his employer, and Employers Mutual Liability Insurance Company of Wisconsin, its insurer, for recovery for personal injuries, under the Jones Act (46 U.S.C.A. § 688, p. 277, Merchant Marine Act of 1920), and by reason of unseaworthiness of the Kelly No. 3, a submersible drilling barge to which plaintiff, a roughneck in the employ of Kelly Drilling Company, was assigned as such.

He alleged that on or about December 2, 1956, while working as a member of the crew of said vessel and assisting in carrying out the overall function for which the vessel was placed in navigation, he was severely injured when a defective chain and plug, weighing in excess of twenty-five pounds, fell upon him from a height of approximately ninety feet, causing permanent injuries, which will prevent him, permanently, from returning to the type of work at which he was employed at the time of his accident.

He further alleged that his employer failed to provide a safe place for him to

work, furnished an incompetent supervisory force, failed to maintain properly the drilling barge and its equipment, persisted in using a defective chain attachment to the instant plug, negligently permitted the plug to fall upon plaintiff, failed to carry out a proper inspection and maintenance program aboard said barge, furnished an unseaworthy drilling barge and failed and neglected to pay maintenance and cure, which caused his injuries to become worse and his eventual maximum recovery to be postponed indefinitely.

The original defendants filed a third party complaint against the Texas Company and its insurer. The Texas Company filed a cross-claim against Kelly Drilling Company and its insurer, and, as a protective measure, plaintiff then filed a supplemental complaint naming the Texas Company as a party defendant to guard against the possibility that the court might find that at law plaintiff was an employee of the Texas Company and the barge in question was chartered to the Texas Company.

■ The case was tried to a jury on a record which, taken most favorably to the verdict, established the facts summarized in the margin,[1] and, plaintiff's motion for an instructed verdict denied, there was a verdict and judgment for defendants. Plaintiff has appealed, urg-

---

1. Kelly No. 3 was a submersible drilling barge, 175 feet long, 50 feet wide and 12 feet 6 inches deep from the first deck. Onto the barge was erected a drilling platform drilling rig and drilling machinery. Kelly No. 3 was constructed for the purpose of drilling for oil and gas, in canals, bays, lakes and inland waters.

Drilling operations could only be commenced and continued after the barge was submerged to the bottom of the water and affixed thereto. The barge could never be raised before drilling operations stopped.

The drilling barge when submerged was no more or less than a steel foundation upon which a drilling rig could be erected for the purpose of drilling an oil well. It could be used in areas where the water was 5 to 10 feet deep.

The barge had no motor power and was moved from place to place by the use of tugs. Once moved to a location where a well was to be drilled, it was submerged and remained submerged on the bottom until the well was completed.

In order to submerge the drilling barge it was necessary to open valves which would permit water to enter into the hull of the barge. To refloat the barge water was pumped out of the hull.

The time required to submerge a barge varied according to the conditions. It could be submerged in as little as thirty minutes. However, in some instances in order to properly submerge the barge around pile clusters, the operation might take three or four hours. Under the same conditions refloating the barge could take as long as four or five hours. The drilling of the oil well, however, took several months. The well in question took approximately two months, it was started on Oct. 19th and completed on Dec. 17th.

The Kelly No. 3 employed only drilling personnel, including a tool pusher or supervisor. A driller, derrick man and three roughnecks, made up a drilling crew. There were no persons employed whose duties did not consist primarily of operating the drilling equipment. There was no captain, first or second mate. The employees were oil field workers.

The duties of the employees were no different than the duties of employees engaged to drill for oil on land based drilling rigs.

Roughnecks on land rigs as well as on Kelly No. 3 spend most of their time drilling the well. However, they also clean up the rig, paint it, chip paint, keep the rig in good condition, load and unload pipe, chemicals, mud and do other things pertinent to the drilling operation.

The drilling crew worked 12 hours a day and were employed on an hourly rate. If the drilling rig had no work, the employees had no work.

The drilling crew, with the exception of the tool pusher, did not sleep on the Kelly No. 3 nor were they served meals.

When a job was completed in one area and the drilling barge moved to another area, the drilling crew on occasion rode the barge and prepared the drilling equipment for drilling at the next location.

Plaintiff was employed as a roughneck by Kelly Drilling Co., Inc., and assigned to the drilling crews working on Kelly No. 3. He had worked on the drilling rig at locations other than the one where the accident occurred.

When Kelly No. 3 was moved to the location where the accident occurred,

ing that there was no sufficient basis in the evidence for the jury's finding and verdict for defendants, and that it was error (1) to refuse to direct a verdict for plaintiff, (2) to deny plaintiff's motion for judgment notwithstanding the verdict, (3) to deny plaintiff's motion for new trial; (4) to refuse to give in charge to the jury plaintiff's requested charges Nos. 2, 2(a), 3 and 4.

In support of his contentions, appellant, apparently of the opinion, notwithstanding the settled law to the contrary, that this court is charged with the duty of retrying the case, pitches his appeal on this proposition:

"We submit that the circuit courts are the instruments for reviewing the findings of juries and must reverse the said findings when they are in error."

In addition, plaintiff contends that reasonable minds could not fail, under applicable law, to conclude that he was a seaman and member of a crew of a vessel,

and that the judgment must be reversed and here rendered for him.

On their part, the appellees, pointing out that it is the province of the jury to determine, whether a person is a seaman and a member of the crew of a vessel under the Jones Act and for the purpose of recovering under the warranty of seaworthiness,[2] argues that the jury's decision is final, if there is evidence to support it, whether or not the district or appellate court agrees with the jury's conclusion, cases note 2, supra, and that even the slightest evidence is sufficient to support a verdict. Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 507, 77 S.Ct. 443, 1 L.Ed.2d 493; Offshore Co. v. Robison, note 2, supra.

As to appellant's complaint of the failure to give in charge to the jury his requested charges 2, 2a, 3 and 4, appellees urge upon us that the charge of the court was full, fair and adequate, and if the requested charges were in themselves unobjectionable, the failure to give them

---

plaintiff was not at work. When Kelly No. 3 reached the location and was submerged to the bottom, plaintiff was not at work. When the well was started plaintiff was not at work. Plaintiff arrived at work after the well had been drilled to a dept of 140 feet.

At all times that the plaintiff was on Kelly No. 3 at the location where he was injured, the barge was firmly affixed to the bottom of the bay and the well hole drilled from a depth of 140 feet to a depth of 11,477 feet. When it reached the latter depth the accident occurred. The drilling commenced on Oct. 19th and the accident occurred on Dec. 2, 1956.

There is no testimony in the record to establish that plaintiff performed any work at the location other than that strictly appertaining to the drilling of an oil well.

Plaintiff did say, however, that during the course of his employment as a roughneck on Kelly No. 3 he was required to load and unload drill pipe from barge to rig, load and unload supply boats, chip and paint Kelly No. 3, clean the barge, empty mud tanks, help pump the barge, help boats tie up alongside the barge, in addition to performing other duties in connection with the running of the pipe in and out of the hole.

There is testimony that on some prior occasion plaintiff rode the barge from one location to another and that he handled a line to the barge from the tug.

At the time of the accident plaintiff, performing his work as a roughneck, was assisting in running pipe back into the hole—a "stabbing" operation. In some manner he was hit by a plug which had been lifted by the elevator of the derrick some 80 feet above the floor of the derrick. The plug was used for the purpose of preventing mud and chemicals from overflowing through the pipe being lowered into the hole. It was being lifted for the purpose of again being attached to a pipe wherein the chain supporting it broke, permitting the plug to fall and hit him on the shoulder.

2. Offshore Co. v. Robison, 5 Cir., 266 F. 2d 769; Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737; Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754; Senko v. Lacrosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404; Gianfala v. Texas Co., 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775; South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 554, 84 L.Ed. 732.

was not error, or, if error, was harmless.

We agree with appellees that at least in the present state of the decisions, the issues in the case were for the jury and the evidence did not demand, indeed it did not permit, the direction of a verdict for either plaintiff or defendant. We agree with it, too, that appellant's reliance on the Robison case as a sort of general declaration or decision that, in all cases where it is alleged that plaintiff, working on a submersible drilling barge, is a seaman and member of a crew, a verdict for plaintiff is demanded, is completely misplaced. Indeed, as plainly appears from plaintiff's requested charge No. 1,[3] which the judge gave the jury, it is quite plain that, though plaintiff did move for a directed verdict, he felt if he did not know, that, in the present state of the decisions, the case was for the jury and, therefore, requested the court to so charge.

■ As to appellant's complaint of the failure to give to the jury certain of plaintiff's requested charges, it is quite plain, we think, that when the charge as a whole is considered, failure to give them was not error. For, in the course of the fair and full charge he gave to the jury, the district judge gave them many special charges which plaintiff had requested of a nature so favorable to plaintiff that the defendant vigorously objected to their being given on the ground: that they in effect instructed the jury that the drilling barge was in fact a vessel, and that plaintiff was in fact a seaman and a member of the crew of the vessel; and thus, in effect, instructed the jury as a matter of law to find for plaintiff.

In addition, when the jury returning to the court room inquired:

"What are the three factors that would establish whether this case comes under the Jones Act?

"Is it understood that all three must be agreed to comply with the Jones Act?

"The definition of a vessel from the charges. Also definition of seaman from charges."

the district judge instructed the jury at length on the matters inquired about, and no objection was made or exception taken by the plaintiff.

To sum up appellant's case, it is quite plain that appellant's real complaint here is that, because the jury in the Robison case found for the plaintiff, and this court refused to set the verdict aside on defendant's contention that as a matter of law it should have had a verdict, the decision in the Robison case must be read as not only favorable to the plaintiff in that case but favorable to plaintiffs generally, in effect, in short, it must be read as a holding that in any case of a submersible drilling barge, a plaintiff must recover under the Jones Act.

It seems quite plain to us that this is a complete misreading of the opinion in the case, and that, while many of the things said arguendo in that case might be regarded as slanting this way or that, the opinion can be quoted as conclusive authority only as to its two concluding paragraphs:

"On the facts of this case, there was sufficient evidence for the case to go to the jury for the determination of whether Robison was a seaman, a member of the crew of a vessel, for purposes of the Jones Act and for purposes of recovering under the warranty of seaworthiness.

"We have considered all of the other points relied on by the parties to this appeal. We find it unnecessary to discuss these points."

No error having been made to appear, the judgment here appealed from is affirmed.

**3.** "You are charged that the determination of whether or not a man is a member of the crew of a vessel is one of fact which must be decided by the jury." Gianfala v. Texas Co., 350 U.S. 879, 76 S. Ct. 141, 100 L.Ed. 775; Senko v. Lacrosse, 352 U.S. 370, 77 S.Ct. 415, 1 L. Ed.2d 404; South Chicago Coal and Dock Co. v. Bassett, 309 U.S. 251, 60 S. Ct. 554, 84 L.Ed. 732.