**PRODUCERS DRILLING COMPANY and Liberty Mutual Insurance Company, Appellants,**

v.

**Luther GRAY, Appellee.**

**No. 21463.**

United States Court of Appeals Fifth Circuit.

May 27, 1966.

Rehearing Denied July 7, 1966.

John V. Baus, Donald L. King, New Orleans, La., for appellants.

Frederick J. Gisevius, Jr., New Orleans, La., for appellee.

Before WHITAKER, Senior Judge,[*] and WISDOM and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

We are again given the opportunity to consider the propriety of a directed verdict on the issues of the status of a submersible drilling barge as a vessel and of a member of the drilling crew as a seaman. The plaintiff, Luther Gray, was a roustabout working on Producers Drilling Company's Rig No. 2 and was injured by a pipe which fell upon his foot during the drilling operation. At the time of the injury the drilling barge was resting on the bottom of a canal dredged for the purpose of allowing the barge to reach the drilling site. Plaintiff brought suit under the Jones Act, 46 U.S.C. § 688, the General Maritime Law of the United States and the Louisiana Workmen's Compensation Act. At the close of all evidence, the District Court granted plaintiff's motion for a directed verdict on the "status" issues by holding as a matter of law that the drilling barge was a vessel and that the plaintiff was a seaman.

The drilling barge here was constructed in a shipyard in Orange, Texas, for the specific purpose of transporting oil well drilling equipment over water to a drilling site, submerging itself with its own gear for the purpose of conducting the drilling operation, and then rising to the surface by means of its own gear and devices to be moved to another location. It had been towed by tugboat the considerable distance from Orange to a point south of New Iberia, Louisiana. It has a hull, navigation instruments and lights, water compartments, pumps, sea cocks, decking, the usual mooring lines and stanchions and, of course, drilling equipment. Since it has no motive power of its own, tugs are required to tow it into place in the canal. Preparatory to drilling, the water compartments are allowed to flood by opening the sea cocks, and the barge settles to the bottom of the canal. To become buoyant again, the water must be pumped out of the tanks.

The barge is manned solely by the drilling crew. In addition to the drilling operations, the crew does maintenance work on the barge, such as chipping and painting, loads supplies, raises and lowers the barge, and handles the mooring lines. Plaintiff worked in one of the crew shifts assigned to the barge. Ordinarily he did not sleep or eat there except for the lunch which he brought with him. A boat brought the crew to the barge every day by way of the canal. Plaintiff was aboard the barge when it was moved into place and assisted in lowering it into position.

Although we have two distinct issues of "status," that of the barge and that of the employee, the same considerations apply in determining whether the court erred in granting the plaintiff's motion for directed verdict. Since the courts have written extensively on this question, we do not find it necessary to do more than summarize their conclusions.

The thorough opinion of Judge Wisdom in Offshore Co. v. Robison, 5th Cir. 1959, 266 F.2d 769, 75 A.L.R.2d 1296, provides an excellent point to begin the consideration of this problem of the relationship of the court and the trier of fact on the issue of status. That case also involved a member of a drilling crew injured on a mobile drilling platform. The Court noted that:

"The Jones Act gives a 'seaman' (not defined) the right to sue in an action at law for damages arising from the negligence of the owner or personnel

* Of the U. S. Court of Claims, sitting by designation.

of a 'vessel' aboard which the seaman is employed. The reach of the Jones Act is a peril of the sea that could hardly have been dreamt of by the land-lubbers in the oil business. The Act has always been construed liberally, but recent decisions have expanded the coverage of the Jones Act to include almost any injury while employed on almost any structure that once floated or is capable of floating on navigable waters."

Id. at 771 (Footnotes omitted). The Court found that the issue of the status of a seaman had two aspects: (1) "What is required in law to constitute a maritime worker a seaman and a member of a crew?" and (2) "In the circumstances of this case, is the question one for the court or for the jury?" The Court answered the first question by finding that "one who does any sort of work aboard a ship in navigation is a 'seaman' within the meaning of the Jones Act."

To solve the second aspect of the status issue, the Court analyzed several Supreme Court cases and the opinions cited by that Court and discovered certain "common denominators" in the decisions. Thus, it was found that a "seaman" classification is not restricted to those aboard "primarily in aid of navigation," but includes those who "serve the vessel in the sense that the work they perform fits in with the function the vessel serves." Id. at 776. The cases also indicated that "vessel" under the Jones Act includes "special-purpose structures * * [which serve as] something more than a means of transport on water." Ibid. The Supreme Court cases revealed that the "determination of whether an injured person was a 'member of a crew' is to be left to the finder of fact * * * [and that a] jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate." Senko v. LaCrosse Dredging Corp., 1957, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404; see South Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Gianfala v. Texas Co., 1955, 350 U.S. 879, 76 S.Ct.

141, 100 L.Ed. 775. The Court in *Robison*, however, did not interpret the Supreme Court holdings to mean that the question of status was always a question of fact for the jury. Thus, the Court noted "that the traditional function of court and jury still obtains * * * and that a court, trial or appellate, may in the proper case hold that there is no reasonable evidentiary basis to support a jury finding that an injured person is a seaman and member of a crew of a vessel under the Jones Act." 266 F.2d at 778. The Court then concluded:

"[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water); or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

\* \* \* \* \* \*

"Attempts to fix unvarying meanings [that] have a firm legal significance to such terms as 'seaman,' 'vessel,' 'member of a crew' must come to grief on the facts. These terms have such a wide range of meaning, under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts."

In 1960, a year after the decision in *Robison*, the question of whether a direct-

ed verdict should be granted on the status of a roughneck on a submersible drilling barge was again presented to this Court. In Adams v. Kelly Drilling Co., 5th Cir. 1960, 273 F.2d 887, cert. denied, 364 U.S. 845, 81 S.Ct. 86, 5 L.Ed.2d 68, the lower court had denied plaintiff's motion for directed verdict on the status questions, and a jury verdict was returned for the defendant. This Court concluded "that at least in the present state of the decisions, the issues in the case were for the jury and the evidence did not demand, indeed it did not permit, the direction of a verdict for either plaintiff or defendant." Id. at 890. The appellants here assert that the *Adams* case controls the outcome of the present case. Admittedly, there are no significant factual distinctions between the two cases, but this does not necessarily require the same result since Judge Hutcheson was very careful in *Adams* to limit his holding to the context of "the present state of the decisions." Thus we are left with the task of determining whether developments in the law now require a different result from that in *Adams*.

As part of the legal background on this question we note that a number of courts even before *Robison* and *Adams* have decided the issue of status as a matter of law. Thus the Supreme Court in Norton v. Warner Co., 1944, 321 U.S. 565, 571–573, 64 S.Ct. 747, 751–752, 88 L.Ed. 931, 936, found that the claimant whose duty "consisted of taking general care of the barge" was a member of the crew of a vessel as a matter of law.[1] Citing *Norton*, this Court held a handyman who spent a large portion of his time working on a yacht to be a member of the crew. Daffin v. Pape, 5th Cir., 1948, 170 F.2d 622. The Fourth Circuit found a fireman on a floating derrick and a gravel spreader on a barge to be within the provisions of the Jones Act. Summerlin v. Massman Constr. Co., 4th Cir. 1952, 199 F.2d 715; Wilkes v. Mississippi R. Sand & Gravel Co., 4th Cir. 1953, 202 F.2d 383, cert. denied, 346 U.S. 817, 74 S.Ct. 29, 98 L.Ed. 344.

In Texas Co. v. Savoie, 5th Cir. 1957, 240 F.2d 674, cert. denied, 355 U.S. 840, 78 S.Ct. 49, 2 L.Ed.2d 51, this Court considered the status of one who was injured while working on a permanently fixed well platform located in a lake. The jury found that the decedent was a member of the crew of the boat which taxied him to the platform although there was no evidence that he performed any duties upon the boat. We reversed since there was not a scintilla of evidence to show that the worker was other than a mere passenger on the boat. See Texas Co. v. Savoie, 5th Cir. 1957, 242 F.2d 667 (denial of rehearing), cert. granted, 355 U.S. 840, 78 S.Ct. 49, 2 L.Ed.2d 51; Offshore Co. v. Robison, 5th Cir. 1959, 266 F.2d 269, 778–779. (Discussion of *Savoie*).

Since the *Adams* case, this Court has on at least three occasions stated that the issue of status is not necessarily a question for the jury in every case. Thibodeaux v. J. Ray McKermott & Co., 5th Cir. 1960, 276 F.2d 42, 46; Stanley v. Guy Scroggins Constr. Co., 5th Cir. 1961, 297 F.2d 374, 378; Rotolo v. Halliburton Co., 5th Cir. 1963, 317 F.2d 9, 12, cert. denied, 375 U.S. 852, 84 S.Ct. 111, 11 L.Ed.2d 79. In *Thibodeaux*, we affirmed a directed verdict for the defendant on the question of the status of a welder who had a brief work assignment on a barge and whose relationship to the barge was described as "purely transitory." The Court noted "the mistaken belief of so many that merely because the status of *who* is a seaman may be a question of fact, the principles summarized by us in Offshore Co. v. Robison * * * perforce make every case one of fact for jury decision." 276 F.2d at 46 (Emphasis in original).

Summary judgment for the defendant was reversed in Stanley v. Guy Scroggin Constr. Co., supra, since the Court could not determine from the record if the plaintiff was a seaman or a passenger on the vessel. The Court, however, made

---

1. The Court pointed out that "seaman" may have a broader meaning than "crew."

321 U.S. at 572 n.5, 64 S.Ct. at 751, 88 L.Ed. at 937.

clear that a directed verdict might still be proper when the evidence was in if the facts were not susceptible of conflicting inferences. 297 F.2d at 378.

In Rotolo v. Halliburton Co., supra, the decedent had been assigned to make certain repairs on a small vessel which would have required approximately four hours. Since the decedent had not been permanently assigned to the vessel and his relationship with the vessel was at the most "spasmodic" and insubstantial "in point of time and work," we concluded "that there [would have been] no reasonable evidentiary basis to support a jury finding that Rotolo * * * was a seaman" and therefore affirmed the district court's directed verdict for the defendant. 317 F.2d at 13.

■ With these opinions as a background, we must now turn to the consideration of the case at hand. There is basically no dispute over the facts involving the status either of the drilling barge or of Luther Gray. The barge was designed to transport drilling equipment to the well site, to submerge for the drilling operation and to refloat for removal to a new site. Luther Gray was assigned to the barge and his duties included the maintenance of that barge and its equipment, assistance in raising and lowering the barge and, of course, a role in the drilling of the well. From this evidence, the district court concluded "that there is no evidence to the contrary, not even a scintilla of evidence to indicate that this [plaintiff] was not a seaman, and not a scintilla of evidence to indicate that this [drilling barge] was not a vessel * * " and directed a verdict for the plaintiff on these two issues of status.[2] We agree that the district court acted properly.

2. The district court analyzed the problem as follows:

While the development of Jones Act cases on the question of status has consistently been in the direction of expanded coverage through the medium of making it more and more a question of jury determination, it is clear that the directed verdict is still a part of the Jones Act status question. And we are all aware of Rotolo v. Halliburton, 5th Circuit, C.A. 20176 [317 F.2d 9], and Thibodeaux v. J. Ray McDermott, 5th Circuit, 276 F.2d 42. Judge Brown was quite succinct in *Thibodeaux.* " * * * it is the mistaken belief of so many that merely because the status of who is a seaman may be a question of fact, the principles summarized by us in Offshore Co. v. Robison, * * * perforce make every case one of fact for jury decision. Neither that opinion nor the cases it discussed made any such declaration."

As in that case and others, the usual rule has been to direct a verdict against the plaintiff on the question of status due to a failure of the proof on the plaintiff's part. A directed verdict is a two-edged sword and can cut both ways. *If the evidence, when measured against the applicable law makes only one conclusion reasonable on the question of status, and that conclusion is in favor of his status as a seaman, then that would mean that he was entitled to a directed verdict.*

What then do the facts of this case indicate? The unimpeached testimony shows that the barge was towed from Texas by tugs, and it is also well to note that that is a considerable distance over water. The structure has all the elements that one looks for in determining whether or not it is a vessel. For instance, she had a hull, navigation instruments, navigation lights, and the usual mooring lines and stanchions. She had ballast tanks filled by pumps to cause the barge to sink to the bottom, and so placed she could accomplish the mission for which she was designed. To place her back in operation over open water, the tanks were pumped out, and once again she became buoyant. As Judge Brawley said in the classic opinion in Saylor v. Taylor, 4 Cir., 77 F. 476: "[One must bear in mind] that they are construed to move upon the water, and nowhere else; and that, while thus moving upon the water, they are subject to all the rules that govern other watercraft such as lights, [to avoid] collisions, et cetera. It will be seen that it has the mobility and the capacity to navigate," which militates for the inescapable conclusion that this structure was a vessel. If the jury verdict were otherwise, I would be compelled to grant a judgment n. o. v. on this issue. Therefore, I shall direct the jury to enter a verdict that this particular structure was and is, in fact, a vessel. Record, Vol. III, pp. 720–23. (Emphasis added.)

 It is well settled that a barge may be a vessel. E. g., Norton v. Warner Co., 1944, 321 U.S. 565, 571, 64 S.Ct. 747, 751, 88 L.Ed. 931, 936. Here we have a special purpose barge designed to serve as a mobile drilling platform. At the time of the accident, the barge was being used for that purpose. The barge is equipped for use in navigable waters, had traveled a considerable distance through such waters to its present site and was, at the time of the accident, located in a navigable canal.[3] As noted by this Court in Offshore Co. v. Robison, supra, 266 F.2d at 771, 779, the coverage of the Jones Act has been extended to cover "almost any structure that once floated or is capable of floating on navigable waters * * *" and the term "vessel" includes "special purpose structures not usually employed as a means of transport by water but designed to float on water." Luther Gray's duties on board the barge included those traditionally performed by seamen as well as those related to the special function of the barge.[4]

Even though these facts are largely undisputed, a directed verdict would not be proper if reasonable men could draw conflicting inferences which might lead to a different conclusion. Offshore Co. v. Robison, supra, at 780. We find no room for such conflicting inferences here. There is no evidence that the vessel here was not being used for its designed purpose or that the seaman was not permanently attached to the vessel and performing duties which contributed to the accomplishment of its mission. Thus there would have been "no reasonable evidentiary basis to support a jury finding" that in this case the submersible drilling barge was not a vessel and that Luther Gray was not a seaman within the provisions of the Jones Act. Cf. Offshore v. Robison, 266 F.2d at 778;

Rotolo v. Halliburton Co., 317 F.2d at 13. For these reasons we conclude that, in light of the present state of the law and the facts of this case, the district court properly directed a verdict for the plaintiff on the issues of status.

We have considered the appellants' other contentions and find them without merit.

Affirmed.

---

3. A vessel has been defined as a floating structure "capable of transporting something over the water." Gilmore & Black, Admiralty 30 (1957), citing Pleason v. Gulfport Shipbuilding Corp., 5th Cir. 1955, 221 F.2d 621.

4. A "seaman" has been defined as "a man who goes to sea, a member of a ship's company * * *, *a person employed upon a floating structure which is a vessel.*" Gilmore & Black, Admiralty 282 (1957). (Emphasis added.)