John W. LOFTIS

v.

SOUTHEASTERN DRILLING, INC. and
Argonaut-Southwest Insurance Co.

Civ. A. No. 66–531.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 25, 1967.

Robert G. Heller and John J. Cummings, III, New Orleans, La., for plaintiff.

Joel L. Borrello, New Orleans, La, for defendants.

CHRISTENBERRY, Chief Judge.

The plaintiff, John W. Loftis instituted this action to recover damages and maintenance and cure, as a result of injuries allegedly received in the scope of his employment as a crane operator aboard the drilling barge SEDCO 135.

Now before the Court is a motion by plaintiff for summary judgment on the following three questions.

1. Status of the barge SEDCO 135 as a vessel and of the plaintiff as a seaman and member of the crew of that vessel.

2. Maintenance and cure accrued.

3. Damages for unwarranted refusal to pay maintenance and cure and attorney fees.

These questions are discussed separately below.

## I. STATUS OF THE BARGE SEDCO 135 AS A VESSEL AND OF THE PLAINTIFF AS A SEAMAN AND MEMBER OF THE CREW OF THAT VESSEL

The material facts as to which there is no genuine issue are the following:

(a) The SEDCO 135 is a documented, certified barge, owned, operated and controlled by Southeastern Drilling, Inc. in the shape of an equilateral triangle, 384 feet on a side, 166 feet in depth, with a maximum draft while floating of 79 feet, 9 inches. The barge is designed to be floated from one drilling location to another and upon arrival at a new location compartments are flooded and the barge is partially submerged to or near the Gulf floor so the drilling operations can be carried out. Likewise, when the drilling operation is complete, the water in the flooded compartments is pumped out, the barge surfaces and can be floated to a new drilling location. It has eating accommodations and sleeping quarters, carries lifesaving and firefighting equipment and is equipped with anchors.

This special purpose structure is not unlike many now being used for exploration of oil and gas in the Gulf of Mexico.

(b) On or about February 5, 1966 the plaintiff was employed by Southeastern Drilling, Inc., as a crane operator on board the drilling barge SEDCO 135, was a regular member of the crew of this barge and was assisting in accomplishing the primary purpose of the barge, namely to drill for oil and gas.

(c) At the time of the alleged injury the SEDCO 135 was located 50 to 75 miles from the Louisiana Coast in the Gulf of Mexico in 79 feet of water.

(d) The injury in question was sustained when he and fellow crew members were handling oil field tubing aboard the SEDCO 135.

Defendants, while citing no cases, apparently rely on Offshore Company v. Robison, 266 F.2d 769 (5th Cir., 1959) in arguing that status questions are reserved for the jury.

However, in Producers Drilling Co. v. Gray, 361 F.2d 432 (5th Cir., 1966) Judge Thornberry, commenting on the Robison case said:

"The Court in Robison however did not interpret the Supreme Court holdings to mean that the question of status was always a question of fact for the jury. Thus the Court noted that the traditional function of court and jury still obtains * * *." 361 F.2d at 434.

That a submersible drilling barge in the appropriate case may be properly found to be a vessel as a matter of law has been established in the jurisprudence of this circuit.

In Producers Drilling Co. v. Gray, supra, the court after analyzing the existing jurisprudence affirmed a directed verdict in favor of the plaintiff as to the status question. The Court said:

"There is no evidence that the vessel here was not being used for its designed purpose or that the seaman was not permanently attached to the vessel and performing duties which contributed to the accomplishment of its mission. Thus there would have been 'no reasonable evidentiary basis to support a jury finding' that in this case the submersible drilling barge was not a vessel and that Luther Gray was not a seaman within the provisions of the Jones Act."

That case like the case at bar involved a member of the drilling crew of a submersible drilling barge.

Again in Marine Drilling Company v. Autin, 363 F.2d 579 (5th Cir., 1966), though the court held that the jury

charge complained of was not in the nature of a directed verdict, the court said:

"We consider however that the state of the law applicable to maritime oil workers has developed to the point where it is proper in the appropriate case for the district judge to direct a verdict on the status of an offshore worker as a Jones Act seaman."

In considering whether this status question can be determined by summary judgment the Advisory Committee's note on the July 1, 1963 amendment to Rule 56 of the Federal Rules of Civil Procedure must be considered. That Committee said:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

■ As the Committee's note further illustrates, one of the purposes of the amendment was to overcome those cases which relied on the averments of pleadings alone to impair the utility of the summary judgment device.

"The very mission of the summary judgment proceedings is to pierce the pleadings and to assess the proof to see whether there is a genuine need for trial." 6 Moore's Federal Practice 2d, Par. 56.01(14) at page 2022.

■ The difference between a motion for directed verdict and that for summary judgment is largely a matter of the stage of the proceedings when the motion is made.

Defendant has offered nothing to overcome the facts as outlined above, but on the contrary the material facts as so outlined have been elicited from the defendant itself in answers to interrogatories propounded by the plaintiff.

■ After a careful analysis of the facts as outlined above, the Court concludes that there is no genuine issue as to any material fact and the motion for summary judgment as to the status of SEDCO 135 as a vessel and of the plaintiff as a member of the crew of that vessel is granted.

## II. MAINTENANCE AND CURE ACCRUED TO DATE

The pertinent facts are as follows: Plaintiff immediately reported the injury to his superior and was taken to shore by a crewboat on the following day. He immediately went to St. Bernard Hospital and was placed in traction for approximately one week. It was then discovered that he had a possible tubercular condition and he was therefore transferred to Charity Hospital in New Orleans where this diagnosis was confirmed and he was treated there until his discharge on August 16, 1966.

■ While at Charity Hospital he continued to suffer greatly from back pain but received little or no treatment for it, though he slept on a board, was given muscle tranquilizers and was seen on two occasions by Dr. Dabazies (known to this court as an orthopedist).

Dr. Dabazies' report dated April 8, 1966 titled A Re-examination indicates that the plaintiff stated "he was still having low back pain but the symptoms have improved considerably since the last interview." The report also states that "the patient is still having some minimal symptoms related to the low back and the physical findings of pain with flexion and incomplete motion of the lumbar spine would tend to substantiate this. Disregarding the tuberculosis, the patient could probably not return to his position as a crane operator at the present time. He was instructed on exercise in order to increase the motion of the lumbar spine. It would be antici-

pated that it would require about another three weeks before this man could be considered able to return to his regular occupation."

There is no further indication of examination by Dr. Dabazies subsequent to this report.

However, plaintiff was examined on July 22, 1966 prior to his discharge from Charity Hospital by Dr. Irving Redler, an orthopedist. Dr. Redler's report concerning this examination in the opinion section states:

"The history of the injury and the symptomatology related by Mr. Loftis suggests that he may have suffered a rupture of one of the lower lumbar intervertebral discs. The complaints of list of the trunk to the right, severe back pain and radiation of pain down the posterior aspect of the lower extremity are classical.

The present orthopedic examination does not reveal any evidence of back disability at this time. However, I have asked Mr. Loftis to call me in the event that he does develop a typical disabling attack with the list of the trunk to the right. I shall make arrangements to examine him if this should occur and I shall advise you of the findings and my opinion at that time."

Plaintiff states in his deposition that he had two such "disabling attacks" but did not see Dr. Redler because "I tried to get in touch with Dr. Redler. It was on a weekend one time and I was unable to get in touch with Dr. Redler; and another time it was at night, and I had spoken to his secretary or receptionist, and she had never called me back."

He suffered a third disabling attack December 21, 1966, and contacted Dr. Redler, who examined him and diagnosed his condition as a ruptured disc. Dr. Redler, in his report dated January 31, 1967 relates this ruptured disc to the original injury complained of. The condition was surgically corrected on De-

cember 27, 1967 by Dr. Redler and he anticipated the plaintiff could resume his former work three months from that date.

At the date of argument of this motion the plaintiff had not been released by Dr. Redler.

The defendant paid compensation at the rate of $70.00 per week from the date of the original injury, February 5, 1966 through April 27, 1966, a total of $820.00

■ If these payments had been made for maintenance rather than compensation none would have been due until his discharge from the hospital on August 16, 1966.

In view of Dr. Redler's report relating the December, 1966 surgery to the original injury, and without prejudice to plaintiff's right to claim such additional maintenance which may accrue subsequent to March 8, 1967, I find plaintiff is now due maintenance at the rate of $8.00 per day from August 16, 1966, through March 8, 1967, excepting those days on which plaintiff was hospitalized for back surgery during this period. (December 21, 1966–January 3, 1967) Defendant, however is entitled to credit for the $820.00 paid as compensation. Thus plaintiff is due $1,528.00 (191 days at $8.00 per day) less $820.00 (compensation payment) or $708.00. A decree shall be entered accordingly.

In addition I find the plaintiff is entitled to reasonable medical costs incurred to date for treatment of the February 5, 1966 back injury.

The question of medical costs incurred for treatment of the tubercular condition is deferred to the trial of this case on its merits.

III. DAMAGES FOR UNWARRANTED REFUSAL TO PAY MAINTENANCE AND CURE AND ATTORNEY FEES

■ In support of this part of the motion plaintiff has submitted a letter

from the mortgagee of his home dated February 23, 1967, showing that as of March 1, 1967 his mortgage payments would be in arrears since April 1, 1966, in the amount of $1,250.22. This letter threatens foreclosure proceedings.

In addition, plaintiff's affidavit states he is unable to maintain an adequate diet which subjects him to a recurrence of tuberculosis, has lost his automobile due to inability to maintain the payments, and has had to sell certain personal effects in order to pay other debts.

There is nothing in this record to indicate the damages were sustained as a result of unwarranted failure to offer cure.

At this stage of the proceedings it cannot be determined that defendant's failure to pay maintenance was arbitrary nor the extent of damages sustained if in fact the decision not to pay maintenance was an arbitrary one.

For these reasons this part of the motion is denied without prejudice to the plaintiff to prove these requisite elements at the trial of this case.