Charles R. McNEESE, Plaintiff,

v.

AN–SON CORPORATION, Defendant.

Civ. A. No. 4763.

United States District Court,
S. D. Mississippi,
Jackson Division.

Oct. 29, 1971.

James Phyfer, Jackson, Miss., for plaintiff.

William Goodman, Jr., Jackson, Miss., for defendant.

## OPINION SUSTAINING PLAINTIFF'S MOTION

DAN M. RUSSELL, Jr., Chief Judge.

This action is before the Court on plaintiff's motion for a summary judgment. Plaintiff, a Mississippi resident, filed this suit against his employer, An-Son Corporation, a non-resident of Mississippi qualified to do business in Mississippi. Plaintiff claims that on December 3, 1968, he was injured while performing his duties as a seaman on a vessel in navigable waters off the coast of Louisiana. He bases his cause of action and claim for damages on the Jones Act, 46 U.S.C. § 688, and admiralty law.

Defendant, in its answer, denies that plaintiff is a seaman within the contemplation of the Jones Act, averring that plaintiff at the time of his injuries was employed as a motorman engaged in oil field work as a member of a drilling crew assigned to the An-Son Rig No. 3, which was not a vessel. Defendant further asserts that plaintiff elected to pursue recovery under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., has received payments thereunder, and is now estopped from claiming relief for damages under any other cause of action, or, alternatively, should the Court determine that An-Son Rig No. 3 was a vessel, that defendant is entitled to off-set the compensation benefits, heretofore paid, against any recovery by plaintiff herein.

Plaintiff bases his motion for summary judgment on the pleadings, plaintiff's deposition taken on May 28, 1971, his answers to interrogatories propounded by defendant, and on the affidavit of a fellow employee, contending that there is no genuine issue of fact, and that on the uncontested facts, plaintiff is entitled to a judgment at law in that on the date of his injury, he was performing his duties as the member of a crew of a vessel. Defendant has offered no counter-affidavits, but resists the motion on the grounds that the determination of when a "roughneck is a seaman" is a question of fact to be determined by a jury. The motion was argued before the Court by both parties. Briefs were also submitted.

The facts as claimed by plaintiff in his pleadings and deposition are summarized in the affidavit of B. J. Roberts, a co-employee of plaintiff who worked on the same rig and on the same shift as plaintiff on December 3, 1968 and prior thereto. Both were members of a five man oil crew assigned to a floatable derrick or barge, An-Son Rig No. 3. Plaintiff was the motorman, primarily assigned to checking the motors. He also assisted in the actual drilling. Prior to his injury he had been working for An-Son approximately eight months on a twelve hour shift, six days on the barge and six days off. During the six days on board, he slept in quarters, which, with food, were furnished by An-Son. During his employment, the barge had been moved to four or five different locations. The barge was not self-propelled, but was towed by tugs. Plaintiff's specific duties, when the barge was moved, was to unload pipe and heavy gear to another barge so Rig No. 3 would float better, close the seacocks and open the valves in order to pump water out of the barge, and help operate the pumps. Plaintiff assisted in tying the tug boat lines to the barge as directed by the tug boat captain. While the barge was being moved, often as long as twenty four hours, the crew, including plaintiff, performed general

maintenance on the barge, including chipping and painting, washing and cleaning the barge, washing out mud pits and tanks and repairing machinery. Specifically, plaintiff kept the motors running to provide lights while the barge was moving as well as sitting in place. When a new location was reached, plaintiff assisted in releasing the lines from the tug, dropping the spuds, opening the seacocks and operating the valves to sink the barge in the mud. He also caught lines from supply vessels coming alongside. The five man crew was the entire crew and performed all the duties necessary. They did not carry seamen's papers.

Authorities relied on by defendant are Texas Co. v. Gianfala, (1955) 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775; Senko v. La Crosse Dredging Corp. (1957), 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404; Texas Co. v. Savoie (5 Cir., 1957), 240 F.2d 674; Grimes v. Raymond Concrete Pile Co. (1 Cir., 1957), 245 F.2d 437; Offshore Co. v. Robison (5 Cir., 1959), 266 F.2d 769; and Adams v. Kelly Drilling Co. (5 Cir., 1960), 273 F.2d 887. In determining whether the injured person was a seaman, or a member of the crew, attached to a vessel, the above cases hold that where the issue is in dispute, or, even if there is no conflict in the evidence, if reasonable minds may fairly draw conflicting inferences from the same evidence, requiring different verdicts, the issue is for the jury to determine the correct inference. In Robison, Judge Wisdom of the Fifth Circuit Court of Appeals posed the query: When is a roughneck a seaman? He stated that there are two aspects to the question: "(1) What is required in law to constitute a maritime worker a seaman and a member of the crew? (2) In the circumstances of this case, is the question one for the court or for the jury?" Robison was an oil field worker employed on a mobile off-shore drilling platform which he called a barge. His duties were exactly those of plaintiff here. At the time of Robison's injury, the platform was resting firmly on the bottom of the Gulf of Mexico, and his injury resulted from his being hit by forty feet of pipe during a drilling operation. Following a jury verdict for the plaintiff, defendant appealed. The Appellate Court in affirming, found that there was sufficient evidence for the case to go to the jury for determination of whether Robison was a seaman, a member of the crew of a vessel, for purposes of the Jones Act and for purposes of recovering under the warranty of seaworthiness, saying:

"There is no reason for lamentations. Expansion of the terms 'seaman' and 'vessel' are consistent with the liberal construction of the Act that has characterized it from the beginning and is consistent with its purposes. Within broad limits of what is reasonable, Congress has seen fit to allow juries to decide who are seamen under the Jones Act. There is nothing in the act to indicate that Congress intended the law to apply only to conventional members of a ship's company. The absence of any legislative restriction has enabled the law to develop naturally along with the development of unconventional vessels, such as the strange-looking specialized watercraft designed for oil operations off-shore and in the shallow coastal waters of the Gulf of Mexico. Many of the Jones Act seamen on these vessels share the same marine risks to which all aboard are subject. And in many instances Jones Act seamen are exposed to more hazards than are blue-water sailors. They run the risk of top-heavy drilling barges collapsing. They run all the risks incident to oil drilling."

In the case last cited and relied on by defendants, Adams v. Kelly Drilling Co., supra, again the plaintiff was a member of an oil drilling crew who received his injury in a drilling operation on a submersible drilling platform, plaintiff claiming that he was a seaman and that the platform was a vessel. Plaintiff's duties again were similar to those of plaintiff herein. The jury in Adams

found for the defendant, and plaintiff appealed. The Fifth Circuit, speaking through Judge Hutcheson, affirmed, overruling plaintiff's contention that the Robison case must be read as holding for the plaintiff, and again finding that plaintiff's status as a seaman was for the jury to determine. The Court said:

"We agree with appellees that at least in the present state of the decisions, the issues in the case were for the jury and the evidence did not demand, indeed it did not permit, the direction of a verdict for either plaintiff or defendant."

The decision in Adams was rendered in January 1960. Plaintiff relies on cases later decided. In Hill v. B. F. Diamond (1962) 311 F.2d 789, the Fourth Circuit Court of Appeals affirmed a lower court decision dismissing plaintiffs' cases filed under the Jones Act. The plaintiffs were a rodman and a welder placing reinforcing rods inside a cylindrical tube tied to a pier prior to being sunk to the bottom of a river as a part of a tunnel. Plaintiffs claimed the tunnel section was a vessel. Although the Appellate Court found the district court correct in its conclusion that the tunnel was not a vessel, and correct in not submitting this issue to the jury, the Appellate Court nonetheless said:

"It is well established that many special purpose craft, such as dredges, floating derricks, and barges equipped for special purposes or operations are vessels within the meaning of the Jones Act and that persons regularly employed aboard such a vessel in aid of its purposes are seamen."

By footnote the Gianfala, Adams, Robison cases were cited among others.

In Producers Drilling Co. v. Gray (5 Cir., 1966), 361 F.2d 432, plaintiff was a roustabout on a drilling barge resting on the bottom of a canal dredged for the purpose of allowing the barge to reach the drilling site. Plaintiff was injured by a pipe which fell on him during the drilling operation. The barge was manned solely by the drilling crew, whose duties were exactly those of plaintiff and crew in the action sub judice. In affirming the district court which granted plaintiff a directed verdict, the Fifth Circuit quoted from Judge Wisdom in the Robison case:

"The Jones Act gives a 'seaman' (not defined) the right to sue in an action at law for damages arising from the negligence of the owner or personnel of a 'vessel' aboard which the seaman is employed. The reach of the Jones Act is a peril of the sea that could hardly have been dreamt of by the landlubbers in the oil business. The Act has always been construed liberally, but recent decisions have expanded the coverage of the Jones Act to include almost any workman sustaining almost any injury while employed on almost any structure that once floated or is capable of floating on navigable waters."

The Appellate Court found that a barge may be a vessel; that this special purpose barge was being used as a mobile drilling rig; that it was equipped for use in navigable waters, and had traveled through such waters to its location in a navigable canal. Further, that plaintiff's duties aboard the barge included those traditionally performed by seamen as well as those related to the special function of the barge. The Court found no room for conflicting inferences, saying there was no evidence that the vessel was not being used for its designed purpose, or that the seaman was not permanently attached to the vessel and performing duties which contributed to the accomplishment of its mission, and that there was no reasonable evidentiary basis to support a jury finding that the submersible drilling barge was not a vessel and that plaintiff was not a seaman within the provisions of the Jones Act. And, finally, the Court said:

"For these reasons we conclude that, in the light of the present state of the law and the facts of this case, the district court properly directed a verdict

for the plaintiff on the issues of status."

Again, in Marine Drilling Co., Inc. v. Autin (1966), 363 F.2d 579, the Fifth Circuit, in holding that the lower court's charge to the jury was not in the nature of a directed verdict, nonetheless stated:

"We consider, however, that the state of the law applicable to maritime oil workers has developed to the point where it is proper in the appropriate case for the district judge to direct a verdict on the status of an off-shore worker as a Jones Act seaman."

In Autin, plaintiff, as in the instant case, was a motorman in an oil field crew on a submersible drilling barge. His injury occurred while he was working on the rig floor during drilling operations and at a time when the barge was stabilized in navigable water. A judgment for plaintiff was affirmed.

■■ From the cited cases, there is no question in this Court's mind but that the status of an oil rig worker on a submersible floating barge as a seaman has moved from that of a jury determination to a legal determination, and that, under the facts in this case, plaintiff is entitled to his motion for summary judgment declaring him to be a seaman.

■ As to whether plaintiff, by virtue of his receiving Longshoremen's and Harbor Workers' Compensation benefits, is estopped to claim a seaman's status, the Court finds that this issue has not been reached by the motion for summary. See Lawrence v. Norfolk Dredging Co., Inc., D.C.Va., 194 F.Supp. 484, holding that plaintiff receiving voluntary compensation has not lost his right to sue under the Jones Act, and see Biggs v. Norfolk Dredging Co., 4 Cir., 360 F. 2d 360.

An order sustaining plaintiff's motion to the extent herein found may be submitted.