Leroy **THIBODEAUX**

v.

**ROWAN DRILLING COMPANY, Inc.,**
and Fidelity and Casualty Company of New York.

**Civ. A. No. 11581.**

United States District Court,
W. D. Louisiana,
Opelousas Division.

June 13, 1969.

J. Clem Drewett, Lake Charles, La., for plaintiff.

Boris F. Navratil, Breazeale, Sachse & Wilson, Baton Rouge, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above entitled and numbered cause having been tried to the Court without jury, and having fully considered the evidence and arguments of counsel in brief, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Defendant, Rowan Drilling Company, Incorporated (Rowan), was at all times mentioned herein the owner and operator of the off-shore submersible drilling barge, "Rig No. 21," which vessel lay afloat in the Gulf of Mexico near Venice, Louisiana, within the territorial jurisdiction of this Court.

2. Defendant, Fidelity and Casualty Company of New York (Fidelity) was at all times mentioned herein Rowan's general liability and maritime insurance carrier.

3. Plaintiff, Leroy Thibodeaux, was at all pertinent times mentioned herein a resident of the Parish of St. Landry, State of Louisiana, and on the day in question, which was either March 12, April 11, or April 18, 1965, plaintiff was working aboard Rig 21 as a seaman, all in the course and scope of his employment by Rowan.

4. On the day in question, plaintiff, a rough-neck, and a co-worker, David Young, were tightening a connection between a "Kelly" and a joint of drill pipe. This was done by using two large wrenches called tongs, which, because of their bulk and weight, were suspended by chains or cables from above. These tongs were activated by power-driven chains and cables, controlled by the driller. The jaws of the tongs, however, had to be latched around the pipe by hand.

5. At the time in question, plaintiff was handling the "back-up" tongs which were connected so as to pull in a clockwise direction, and Young was handling the "lead" tongs, which were connected so as to pull in a counter-clockwise direction.

Young would cause his tongs to bite the lower pipe, thus restraining it; then plaintiff would connect his tongs to the Kelly; thereafter, the driller would activate a power winch which would pull plaintiff's tongs in a clockwise direction, thus tightening the Kelly into the pipe held stationary by Young's tongs.

6. The jaws of the tongs contained a number of dies. These are small grooved bars made of very hard metal. As the grooves became worn, dies could be changed.

At the time in question, the grooves on the back-up tongs were worn to such an extent that they would not hold consistently when pressure was applied.

7. As a result of the worn condition of the dies on the back-up tongs, on the day in question, in the course of the operation described above, the tongs suddenly slipped, struck plaintiff in the chest, and propelled him backward against a pipe protruding from the drill floor.

8. Several times prior to the accident, the tongs had slipped in a similar manner but had not struck plaintiff. This prior slipping had caused plaintiff, Young, the driller (whose name was Jack Halley), and the tool-pusher to search, in vain, for new dies. We need not make a finding as to whether new, unworn dies actually were on the rig at the time in question.

9. The presence of the tongs with worn dies rendered the vessel unseaworthy, and created an unsafe place for plaintiff to work.

10. Plaintiff was injured as the proximate result of the condition of the tongs with worn dies.

11. In the course of his employment with various employers prior to his employment with Rowan, plaintiff had suffered numerous injuries, some minor and some rather serious. At the time of this accident, however, he was in reasonably good health.

12. As a result of the accident, plaintiff sustained a ruptured intervertebral disc in his lower back with much attendant disability, pain, and discomfort.

13. Following the injury, plaintiff continued to work on the rig from four to six weeks. Moreover, the exact nature of the above condition was not discovered until November 1, 1965, when a myelogram revealed that plaintiff probably was suffering from a ruptured disc, and then a November 23, 1965, operation confirmed the presence of the ruptured disc.

■ These facts, however, do not operate to defeat plaintiff's claim. Almost immediately after leaving the vessel in May of 1965, plaintiff went to a doctor for treatment. From then until November, 1965, when a myelogram was finally conducted, revealing plaintiff's ruptured disc, he almost constantly had consulted with various physicians about his back. Moreover, the type of injury plaintiff sustained, by its very nature, often does not reveal itself until a myelogram is conducted.

14. From the date of injury, to the date of trial, a period of approximately two years, plaintiff experienced severe back pain, causing him to be unable to pursue his occupation as a rough-neck.

15. Plaintiff has reached maximum recovery and has a 15% total bodily disability, directly attributable to the injury he sustained, as described, giving rise to this action. This disability will permanently prevent plaintiff from performing work as a rough-neck. However, he will be able to perform jobs requiring less exertion.

16. As of the date of the trial, plaintiff was forty years of age, with a life expectancy of 31.6 years, as computed by the 1963 Life Tables published by the U.S. Department of Health, Education and Welfare.

17. For the three-year period prior to the date of his injury, plaintiff's earning capacity averaged about $500 per month.

At the time of trial, Fidelity had paid compensation to plaintiff, under the Louisiana Workmen's Compensation law, in the amount of $630.00 and had paid medical expenses in his behalf in the amount of $1164.00.

18. Considering these factors, plaintiff, as a result of the accident, has sustained, or will sustain, a total loss of earnings, past and future, including maintenance, in the amount of $45,000. For pain and suffering, past and future, he is entitled to $25,000. He is also entitled to $885.56, the amount of unpaid medical expenses at the time of trial. Since he reached the maximum point of cure about August 8, 1966, he is not entitled to any further medical expenses.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter herein.

■ 2. The warranty of seaworthiness applies to a rough-neck employed aboard a submersible drilling barge and assisting in accomplishing the barge's mission.

■ 3. To such a worker is owed the duty to provide a reasonably safe place to work, as well as reasonably safe appliances with which to perform the

work. Mahnich v. Southern Steamship Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944).

4. The failure of the piece of equipment under proper and expected use is a sufficient predicate for a finding of unseaworthiness. Texas Menhaden Co. v. Johnson, 332 F.2d 527 (5th Cir. 1964).

5. Unseaworthiness is not excused because proper equipment was available but went unused. Skibinski v. Waterman Steamship Corp., 360 F.2d 539 (2d Cir. 1966).

6. In this case, Rowan failed to provide a seaworthy vessel in that certain equipment, namely, a set of tongs, was defective. This failure was the proximate cause of the accident injuring plaintiff.

7. At the time of the accident, notwithstanding earlier slippages, plaintiff was where he was required to be in doing what he was required to be doing; thus he was not contributorily negligent, and did not "assume the risk." Ledet v. United States Oil of Louisiana, Inc., 237 F.Supp. 183 (E.D.La.1964).

8. Plaintiff is entitled to recover from defendants, Rowan and Fidelity, the sum of $70,885.56.

9. Plaintiff urges that we should award prejudgment interest. There is some doubt as to whether we have the discretion to allow such, even in a case such as the one *sub judice*, which originally was brought on the "admiralty side" of the docket. See Sanford Bros. Boats, Inc. v. Vidrine, 412 F.2d 958 (5 Cir. 1969). Be that as it may, since we, before awarding judgment, gave due consideration to the delay between the date of the injury and the date of the judgment, prejudgment interest clearly is not in order. See National Airlines, Inc. v. Stiles, 268 F.2d 400 (5th Cir. 1959), cert. denied 361 U. S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959).

A proper decree should be presented.