**Adolph LEDET, Libelant,**

v.

**U. S. OIL OF LOUISIANA, INC., and the Travelers Insurance Company, Respondents.**

**No. 6055, Division D.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 31, 1964.

Johnny X. Allemand, Thibodaux, La., Kierr & Gainsburgh, Samuel C. Gainsburgh, New Orleans, La., for libelant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Edmond C. Salassi, Robert B. Acomb, Jr., New Orleans, La., for respondents.

AINSWORTH, District Judge:

Adolph Ledet brought this libel in personam under the Jones Act and the General Maritime Law against U. S. Oil of Louisiana, Inc. and its insurer, Travelers Insurance Company, for damages, maintenance and cure, civil and maritime, as a result of an injury which he sustained while working aboard the submersible J. W. Mecom Drilling Barge No. 6 on June 3, 1963.

Libelant was employed from January 1963 to June 3, 1963 by the respondent, U. S. Oil, in the capacity of a roughneck aboard the drilling barge, which is used in the exploration and development of the Gulf offshore oil fields. The barge was towed to the site of the accident on January 16, 1963. It is a special purpose craft, capable of being floated and moved from place to place over water wherever it is needed. At the time of the accident it was actively engaged in its over-all function, drilling for oil. Though the barge was submerged and resting on water bottom while engaged in drilling operations at the time of the accident, it was nevertheless a vessel, and we so find. Stanley v. Guy Scroggins Construction Company, 5 Cir.,1961, 297 F.2d 374; Offshore Company v. Robison, 5 Cir.,1959, 266 F.2d 769, 75 A.L.R.2d 1296. The Jones Act and General Maritime Law pertaining to the rights of seamen are therefore applicable here.

Ledet was attached to this vessel in his employment as a roughneck for over four months and was assisting in the accomplishment of the vessel's mission, function and purpose. Ledet was therefore a seaman at the time of his injury. Offshore Company v. Robison; Stanley v. Guy Scroggins Construction Company, supra.

On the day of his injury, libelant and other members of the crew of the barge were "laying down" pipe. The string of pipe (in 30-foot lengths) was raised by use of the vessel's elevators; the "slips" or clamps were applied to hold the string of pipe suspended while libelant and another roughneck (one Savoie) applied their "tongs" or large wrenches to break the screw-type connection between the uppermost length of pipe and the remainder of the string; once the connection had been broken libelant would take the spinning chain and wrap it around the lower end of the uppermost joint of pipe which was then hooked to another chain on the draw works so as to rotate and unscrew it; once freed, the joint of pipe hung in the barge's elevators while one of the men pushed the lower end of the joint, called "tailing," over to a trough located in an opening in the derrick's bracing, called a V-door; almost simultaneously the driller began to lower the elevators, causing the lower end of the pipe to lead through the trough and onto a ramp which connected the rotary deck with the pipe rack deck some 4 feet below; at a point approximately 8 feet from the deck the elevators were supposed to be unlatched, allowing the joint of pipe to fall freely and slide down the ramp onto the pipe rack.

The driller, Tillman Rouse, who was in charge of the other men, was operating the draw works. Elton Savoie, "lead" tongman, handled one set of tongs and was supposed to unlatch the elevators to release the pipe down the ramp. Libelant's job was to apply the "back-up" tongs and then the spinning chain. A roughneck whose name was unknown had the job of tailing the pipe over to the trough at the head of the ramp in the V-door. J. D. Phares and another member of the crew were working on the pipe rack receiving the pipe as it slid down. When a joint of pipe had been completely unscrewed from the remainder of the string, the spinning chain which libelant was handling would be drawn back by him to his feet to be ready for the next joint of pipe.

Ledet was bending over, picking up this chain, his back to the elevators, when

he was struck across his back by the length of pipe which was being directed through the V-door. Savoie testified that his hand slipped off of the rope used to unlatch the elevators because his gloves and the rope were covered with mud and water. The driller continued to lower the pipe until it was about 3 feet from the deck. Instead of waiting until the elevator could be stopped and the pipe raised to a higher position, Savoie pulled on the rope a second time and the joint of pipe came bounding out of the elevators and struck libelant. The barge had a list at the time which allowed the traveling block to swing and thereby release the pipe.

The elevators and the rope used to unlatch it were covered with mud. Savoie testified that they wash the mud off at varying intervals but that it had been some time since they had stopped to clean the elevators. Mud is not unknown to drilling operations, but some procedure should have been employed by respondent so that the dangers involved would be minimized. It was also negligence not to raise the pipe after it had passed below the level at which it could have been safely released. These two incidents of negligence were the cause of libelant's injury.

The elevator's hinges were stiff as the result of being impregnated with mud and this constituted an unseaworthy condition aboard the vessel. The list of the barge was also a contributing factor to the accident in that it caused the traveling block to swing more than it should which allowed the elevator to open and release the pipe and strike libelant.

■■ A vessel owner warrants to his seamen employees that the vessel is seaworthy. For a breach of this warranty which causes injury an employer is liable in damages. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944); McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958). Libelant is entitled to recover damages both on the ground of unsea-worthiness and negligence of the vessel owner.

■ The respondent's contention that the libelant was contributorily negligent is without merit. Ledet was bending over, picking up his chain, with his back to the operation at the time. He was in a place where he was supposed to be and doing what he was supposed to do. He was therefore not negligent in any way so as to deny or reduce his recovery.

■ We next consider the extent of libelant's injuries. The orthopedist who testified for the respondent stated that when he examined Ledet in 1963, he diagnosed his condition as the result of advanced degenerative joint disease with subchondral sclerosis on the right side. This diagnosis was based upon one examination of Mr. Ledet and an examination of X-rays. The orthopedist who testified for the libelant stated that he believed that libelant had a ruptured lumbar intervertebral disc. Libelant's physician made this diagnosis after three examinations and with an examination of X-rays and a myelogram. A laminectomy was performed on Ledet on September 28, 1964. At the time of the trial libelant said that he was feeling better and attributed this to the favorable results of the operation. In resolving the conflict of the medical evidence, we believe that libelant's orthopedist was in a better position to diagnose the condition, having seen libelant on several occasions, having examined the X-rays and having performed a myelogram. Finally the operation itself, he states without contradiction, confirmed his diagnosis. Now libelant has said that even though the operation was performed shortly before trial he was already getting some relief from the pain he had been experiencing.

The operation was a success in view of the libelant's own statements. His physician believes that he will make a satisfactory recovery with a moderate degree of permanent disability and that he should be able to perform some work but that it would have to be less demanding physically than roughnecking.

As a seaman, Ledet was entitled to receive maintenance and cure from the date of his injury until the day of trial at the rate of $6.00 per day less the twenty-two days which he spent in the hospital. The total amount to be awarded for maintenance is therefore $2,838.00. The amount to be awarded for cure, treatment, operation and hospitalization is $997.05. Libelant seeks to recover damages for the respondent's failure to pay maintenance and cure. Damages will not be allowed because the circumstances here do not warrant such an award. The medical evidence was conflicting and we do not believe that failure to pay libelant promptly was unreasonable or arbitrary.

Prior to the accident libelant earned approximately $6,000.00 a year. He was 43 years old when injured. Ledet's loss of earnings to the date of the trial is estimated to be $8,048.00. An amount of $25,000.00 will be adequate to compensate for his pain and suffering and loss of earning capacity. The total award therefore is the sum of $36,883.05.