James T. CLARY

v.

**OCEAN DRILLING AND EXPLORA-
TION COMPANY.**

CIV. A. No. 74–970.

United States District Court,
W. D. Louisiana,
Lafayette Division.

April 1, 1977.

John Sturgeon, Sturgeon & Gore, Ferriday, La., and Jarrell E. Godfrey, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for plaintiff.

James E. Diaz, Davidson, Meaux, Onebane, Donohoe, Bernard, Torian & Diaz, Lafayette, La., for defendant.

## RULING ON PLAINTIFF'S MOTION FOR JUDGMENT N. O. V. OR FOR NEW TRIAL

PUTNAM, Senior District Judge.

Plaintiff, James T. Clary, was injured while working aboard a submersible drilling barge on the outer continental shelf off the coast of Louisiana. He brought suit for damages under the Jones Act and general maritime law for unseaworthiness of the vessel. The accident occurred on February 14, 1974, at about sunrise. The jury found against plaintiff on both counts, and the matter is before us on motion for judgment n. o. v. and alternatively for a new trial.

Counsel argues that the jury's findings were not reasonable under the evidence, primarily because the anti-pollution retaining wall on the rig floor in the area of the pipe rack, over which Clary alleges he fell, was not color coded yellow as a stumbling hazard as required by the International As-

sociation of Drilling Contractor's Safety Manual (Ex. P 40), admitted into evidence.[1] Counsel was permitted to read the pertinent provisions of the manual to the jury during the trial, while a petroleum engineer, Dr. Paul Montgomery, was on the stand. When he asked this witness his opinion as to whether or not the retaining wall was a stumbling hazard as defined in the IADC safety manual, the Court commented that it would instruct the jury that it was such in its opinion, and counsel did not pursue the matter but tendered the witness at that time.[2]

Obviously, the jury simply did not consider the fact that the retainer was not painted yellow to be negligence on the part of the defendant, that it created an unseaworthy condition of the ship, or that it was causally related to the fall and plaintiff's alleged injury. Photographs introduced by plaintiff showed the object in question to be plainly visible on the deck where the fall occurred, and, since Clary was stepping backward carrying one end of a heavy piece of equipment when he fell, such a conclusion is entirely reasonable and logical. In view of the visibility of the retaining wall, it should have been seen and plaintiff should have been aware of it had he been keeping a proper lookout for his own safety. Because it, and other physical hazards of like nature contemplated by the IADC manual and the OSHA regulation, note 1 supra, were obvious and numerous in this work area of the barge, painting all of them yellow would have been impractical and would also have greatly diminished the effectiveness of the entire color coding scheme. The area itself and the nature of the work required caution on the part of crew members working there, no one hazard being more inimical to personal safety than any other.

█ The case was submitted to the jury on special interrogatories which were

1. OSHA Safety Regulations, Title 29 C.F.R. § 1910.144(a)(3), discussed infra, adopts yellow as the basic color for designating caution and marking physical hazards "such as: striking against, stumbling, falling . . .", etc.

2. Later in the course of the trial the jury was instructed that the question was one for them to determine under all of the facts and circumstances of the case, and they were not bound by the opinion of the Court as stated during the trial.

first tendered to counsel and to which no objection was made. When the jury found no negligence on the part of defendant, Ocean Drilling and Exploration Company (ODECO), "which played any part, even the slightest, in causing or bringing about the accident of February 14, 1974 . . ." in answer to Interrogatory No. 1, and no unseaworthiness in answer to Interrogatory No. 2, they were not required to answer the remaining interrogatories under the Court's instructions. Consequently, the issue of plaintiff's own negligence was not reached.

No special interrogatories were requested on the specific issues raised by the failure to color code the retaining wall, or its causal connection to the plaintiff's accident. Each party waived its right to a jury determination of these facts by failing to demand their submission, and the Court now supplies any deficiency in the findings, if such there be under the broad instructions given to the jury. F.R.C.P. 49(a), Title 28 U.S.C.A. We find that it did not in fact contribute to or cause the accident. Considering the evidence as a whole, we find that the defendant sustained its burden of establishing by a preponderance of the credible evidence in the case that the sole cause of plaintiff's injury was his own negligence in failing to take into account the fact that he had to cross or go around the retaining wall while carrying the piece of equipment he and his co-workers were clearing from the area of the pipe rack, before stacking pipe thereon.

The most serious ground presented by the motion for a new trial is plaintiff's contention that we committed error in excluding from the jury's consideration safety standards promulgated by the Occupational Safety and Health Review Commission pursuant to Title 29 U.S.C.A. § 651, et seq., and the denial of the requested special charge that the failure to color code the retaining wall yellow as a stumbling hazard was a violation of a safety statute, constituting negligence per se on the part of ODECO, and also barring the defense of contributory negligence under the Jones Act, Title 46 U.S.C.A. § 688, and the Federal Employers'

Liability Act, Title 45 U.S.C.A. § 53. This section specifically provides that contributory negligence is no defense to a suit under the Jones Act when the shipowner-employer violates a statute enacted for the protection and safety of members of the crew of its vessel. *Kernan v. American Dredging Company*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).

In *Kernan*, the Court held the shipowner liable upon a showing of a violation of a lighting regulation adopted by the Coast Guard for the prevention of collisions. A fire resulted, causing the death of a seaman. The Court held that under these circumstances proof of negligence was not required to make out plaintiff's case under the Jones Act, and that ". . . a violation of . . . [the statute] . . . creates liability under FELA if the resulting defect or insufficiency in equipment contributes in fact to the death or injury in suit, *without regard to whether the injury flowing from the breach was the injury that statute sought to prevent . . .*" (Emphasis supplied. 355 U.S. 426 at 433, 78 S.Ct. at 398). Thus, the Court went even further than the accepted tort doctrine of the common law that imposes liability for violation of a statutory safety regulation only where the injury is one which the regulation was designed to prevent. If this doctrine applies, rather than rest our decision on our own finding and conclusion that the failure to color code the retaining wall yellow did not in fact contribute to the accident and injury, this court would in all probability grant plaintiff's motion for a new trial. The effect of OSHA regulations must, therefore, be considered.

Plaintiff attempted to prove that defendant's vessel, the Ocean Driller, had violated OSHA regulations found in Title 29 C.F.R. §§ 1910.144(a)(3), 1915.51, 1916.51, 1926.25, 1926.56 and 1926.605. We have no difficulty in sustaining our ruling at the trial that the last five sections do not apply to this plaintiff. He was a member of the crew of the Ocean Driller, a vessel in navigation. *Gianfala v. Texas Company*, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955);

*Offshore Company v. Robison,* 266 F.2d 769 (5 Cir. 1959) and other cases too numerous to cite. Masters and crew members of vessels are specifically excluded from § 1915.1 et seq. (ship repairers) and § 1916.1 et seq. (ship builders)[3], and 1926.1, et seq., apply only to construction workers.[4]

Section 1910.144(a)(3) requires color coding of stumbling hazards by painting them yellow. Such hazards are not otherwise defined. As already seen, we allowed evidence of the color coding requirements of the IADC Accident Prevention Manual (Ex. P 40), which does contain a workable definition of the term "stumbling hazard". We have already discussed the color coding of the retaining wall in question under the circumstances of this case, and will not reiterate our views here.

By the explicit provisions of Title 29 U.S.C.A. § 653(b)(4), it is provided that nothing in the act shall be ". . . construed to supercede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employees and employers under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment."

Counsel for plaintiff relies upon *Kernan,* supra, and *Marshall v. Isthmian Lines, Inc.,* 334 F.2d 131, 134 (5 Cir. 1964); *Manning v. M/V "Sea Road,"* 417 F.2d 603 (5 Cir. 1969); Cf. *Arthur v. Flota Mercante Gran Centro Americana, S.A.,* 487 F.2d 561 (5 Cir. 1973), to which we may add *Bonura v. Sea Land Service,* Inc., 505 F.2d 665 (5 Cir. 1974).

These cases dealt with injuries arising out of violations of safety regulations pertaining to longshoremen which were first promulgated by the Secretary of Labor and are now incorporated into the OSHA regulations under Title 29 C.F.R. §§ 1918.1 et seq. To repeat, masters and crew members of

vessels are excepted therefrom. In all of these cases the Court found the vessel negligent per se or unseaworthy per se because of the violation of safety regulations designed to protect this particular class of workmen.

Since then however, in *Jeter v. St. Regis Paper Company,* 507 F.2d 973 (5 Cir. 1975) the Court has held that as to those workmen covered under the safety regulations (29 C.F.R. § 1910.1 et seq.), the Act does not create a private right of action against an employer for violation of its terms. See also *Otto v. Specialties, Inc.,* 386 F.Supp. 1240 (N.D.Miss.1974).

We cannot conceive that Congress or the Secretary of Labor intended by the adoption of the sweeping general regulations of § 1910.1 et seq., Title 29 C.F.R., subpart A, where we find § 1910.144(a)(3), to impose these stringent controls upon all manner of vessels, including drilling barges, crew boats, pipeline lay barges, tugs, scows, dragline barges, fishing vessels, passenger vessels, and others ad infinitum, that ply the high seas over the outer continental shelf; especially so in view of the holding in *Kernan,* supra, which would impose almost absolute liability on shipowners under the Jones Act and general maritime law if the regulations were not followed. To adopt this view would seriously affect the duties of the Coast Guard respecting certification of vessels, inspection of their gear and equipment, their construction, seaworthiness and other essential considerations peculiar to the particular type of vessel involved. See: Title 46 U.S.C.A. §§ 375, 390(b), 391.

Congress did not define the term "workplace" as it is used in the Act, Title 29 U.S.C.A. § 653(a), nor has the Secretary done so in the OSHA regulations.[5] The jurisdiction of the Secretary and the Review Commission extends to all of the territories and possessions of the United States,

---

**3.** Title 29 C.F.R. §§ 1915.2(d) and 1916.1(b)

**4.** Title 29 C.F.R. § 1910.12(b) defines "construction work" contemplated by § 1926.1 et seq.

**5.** Webster's Third New International Dictionary, unabridged, 1961, Merriam Company, defines workplace as follows:

"Workplace: n. a place (as a shop or factory) where work is done."

including Outer Continental Shelf Lands defined in the Outer Continental Shelf Lands Act, Title 43 U.S.C.A. § 1331 et seq. Jurisdiction would, accordingly, appear to be limited by the reservation set out in § 1332(b) of the Lands Act, viz:

"This subchapter shall be construed in such manner that the character as *high seas* of the waters above the outer continental shelf and the right to navigation and fishing therein shall not be affected." (Emphasis supplied).

The Coast Guard has published its intention to adopt Marine Occupational Safety and Health Standards in this very area on certificated offshore mobile drilling units, amending those already promulgated by it in Title 46 C.F.R. Chapter 1, et seq. See Vol. 40 F.Reg. No. 155, August 11, 1975. It is our conclusion that such vessels operating on the high seas as was the Ocean Driller in this case, are not "workplaces" falling within the general regulations of Title 29 C.F.R., subpart A, §§ 1910.1 et seq.[6]

Absent an express declaration by the Congress clearly manifesting an intent to upset the long established separation of admiralty law from common law doctrines and safety regulations pertaining to land-based labor, any other interpretation of these enactments would, in the opinion of this court, amount to judicial legislation making shipowners virtual insurers of the safety of the men who are employed as masters and members of the crew of such vessels. This we decline to do.[7]

Plaintiff's motions are denied. Our opinion on the claim for maintenance and cure will follow in due course.

IT IS SO ORDERED.

---

**6.** This section contains regulations based on national consensus standards, adopted without formal hearings as required by Title 29 U.S. C.A. § 655(a).

**7.** We express no opinion whatsoever regarding the application of the OSHA regulations to artificial islands and fixed platforms on the outer continental shelf.