**Mary E. BARGER, Plaintiff-Appellee, Cross-Appellant,**

v.

**PETROLEUM HELICOPTERS, INC., Defendant-Appellant, Cross-Appellee.**

No. 81–2262.

United States Court of Appeals, Fifth Circuit.

Nov. 10, 1982.

Rehearing and Rehearing En Banc Denied Jan. 6, 1983.

Rehearing Opinion Amended Jan. 13, 1983.

Vance E. Ellefson, New Orleans, La., for defendant-appellant cross-appellee.

Charles B. Colvin, New Orleans, La., amicus, for William V. Moore.

Hubert Oxford, III, Beaumont, Tex., for plaintiff-appellee cross-appellant.

Appeals from the United States District Court for the Eastern District of Texas.

Before BROWN, RUBIN and REAVLEY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This case raises many of the issues we decided in *Smith v. Pan Air Corp.,* 684 F.2d 1102 (5th Cir.1982). We, therefore, address in detail only one issue that distinguishes this case: as to claims against a helicopter pilot's employer for the death of the pilot while transporting passengers to work on the outer Continental Shelf, is the Longshoremen's and Harbor Workers' Compensation Act the exclusive remedy? We conclude that such a pilot is not covered by the Jones Act because an aircraft is not a vessel, that the Outer Continental Shelf Lands Act applies to the pilot, and that the LHWCA is the exclusive remedy for those who have claims resulting from his death.

Walter Barger, like Walter Kolb, one of the decedents in *Smith,* was a helicopter pilot regularly engaged in transporting oil field workers and equipment from Louisiana to platforms located in the Gulf of Mexico on the outer Continental Shelf. While he was flying a helicopter carrying eleven passengers, the helicopter crashed into the Gulf forty miles offshore, killing all aboard. Barger's widow and children seek damages in admiralty for his death from his employer, Petroleum Helicopters,[1] contending that Barger was a Jones Act seaman and also asserting maritime tort claims for the alleged unseaworthiness of the helicopter. After trial on the merits, the district court sustained both claims and awarded damages.

We held in *Smith* that the wrongful death claim of Kolb's beneficiaries against a third party, not the decedent's employer, arising from the crash of an aircraft into the high seas, is properly within admiralty jurisdiction by virtue of decisions so interpreting the Death on the High Seas Act, 46 U.S.C.A. §§ 761–768 (West 1975 & Supp. 1982) (DOHSA). *Smith,* 684 F.2d at 1108–12. The accident involved in *Smith* occurred on the outer Continental Shelf, but we decided that § 4(a) of the OCSLA, 43 U.S.C. § 1333(a) (Supp. IV 1980), making state law applicable as surrogate federal law to accidents occurring on fixed platforms, does not supersede the DOHSA so as

---

1. Suit was also filed against Bell Helicopter Textron, a division of Textron, Inc., the manufacturer of the helicopter. Bell and the plaintiff agreed that, if Bell were cast in judgment, Bell would pay the plaintiff $225,000 and waive any right to appeal. The district judge found Bell also liable and apportioned liability 20% to Bell and 80% to Petroleum Helicopters, 514 F.Supp. 1199. Thus, no issues relating to the plaintiffs' claims against Bell are before us.

to oust admiralty jurisdiction over the plaintiff's claim.[2]

The wrongful death claim in this case, unlike the Kolb claim in *Smith,* is asserted against the decedent's employer, Petroleum Helicopters. Section 4(b) of the OCSLA provides, "[w]ith respect to . . . death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting . . . the natural resources . . . of the subsoil and seabed of the outer Continental Shelf, compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act [33 U.S.C.A. §§ 901–950 (West 1978 & Supp.1982) (LHWCA)]." 43 U.S.C.A. § 133(b).[3] Section 933(i) of the LHWCA provides that this compensation is the exclusive remedy of an injured employee against his employer. 33 U.S.C.A. § 933(i). Therefore, if Barger was covered by 43 U.S.C. § 1333(b), there can be no recovery against his employer under general maritime law. Even if admiralty jurisdiction existed because Barger's death resulted from an aircraft crash on the high seas, *see Smith,* 684 F.2d at 1109, recovery would be barred by § 933(i) and the claim would fail on the merits.

■ The *Barger* plaintiffs argue that Barger was a Jones Act seaman, and therefore excluded from coverage under 43 U.S.C. § 1333(b). That section provides that the term "employee" does not include "a master or member of a crew of any vessel." 43 U.S.C. § 1333(b)(1). For the same reasons discussed in *Smith,* 684 F.2d at 1112–14, we conclude that a helicopter cannot be considered a "vessel," and, therefore, that this exclusion from LHWCA coverage does not extend to Barger.

■ *Smith* involved several claims. Jordan, whose claim was asserted by his beneficiary (Smith), was flying a plane. Kolb and Barger were both piloting helicopters. Jordan's aircraft, like Barger's, had attachments enabling it to land on and take off from water. Kolb's helicopter apparently had no such attachment. But each of these aircraft, whether or not fitted with pontoons, was designed primarily to fly through the air not to travel on water. The dissent of our respected colleague apparently assumes that a helicopter sans pontoons used for the self-same purpose, to transport personnel to and from offshore platforms, is not a vessel. Neither a plane nor a helicopter undergoes a miraculous transformation from aircraft into vessel when pontoons are attached to it, and their pilots do not by this act become members of a "vessel's" crew. The helicopter's amphibian adaptations were designed solely to permit it to take off from and land on water and to taxi on water in order to position itself for loading and unloading with a view to travel through the air. It was an aircraft that might use the surface of the water for a time to facilitate airborne commerce. An airplane does not become an automobile because it has wheels attached and can taxi on runways. The wheels no more change aircraft into land vehicles than pontoons change aircraft into vessels. Just as a vessel does not lose its nautical quality merely because it is anchored for a time to serve as a drilling platform, an aircraft does not become a vessel because it is adapted to float and taxi on the water for brief periods in order to perform incidental functions

---

**2.** *See Smith,* 684 F.2d at 1109–11. For similar reasons, we held that Petroleum Helicopters' claim for property damage arising from the same accident was likewise not ousted from admiralty jurisdiction by the OCSLA. *See id.* at 1112.

**3.** The section continues:

For the purposes of the extension of the provisions of the Longshoremen's and Harbor Workers' Compensation Act under this section—

(1) the term "employee" does not include a master or member of a crew of any vessel . . .;

(2) the term "employer" means an employer any of whose employees are employed in [exploring for, developing, removing, or transporting by pipeline the natural resources . . . of the subsoil and seabed of the outer Continental Shelf].

43 U.S.C.A. § 1333(b) (West Supp.1982).

that aid in its primary mission. The Jones Act was designed to aid those who face the hazards of the sea, not the perils of the air. Barger did not meet death from a collision at sea or the action of the waves but as a result of an aircraft disaster. *See* Symposium, *Aircraft as Vessels Under the Jones Act and General Maritime Law,* 22 S.Tex. L.J. 595, 600–03 (1982).

■ It remains only to be determined, then, whether the claim against Barger's employer is covered by the OCSLA. This depends on (1) whether Barger's death was the "result of operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting . . . the natural resources . . . of the outer Continental Shelf," and (2) whether Barger's employer, Petroleum Helicopters, was an "employer" within the intendment of 43 U.S.C. § 1333(b)(2).

The first of these conditions is clearly met. In *Stansbury v. Sikorski Aircraft,* 681 F.2d 948 (5th Cir.1982), a Chevron Oil Company employee was killed when the Chevron-owned helicopter in which he was a passenger crashed on the high seas over the Shelf. We held that the compensation act provided Stansbury's sole remedy against his employer, Chevron, because Stansbury had been inspecting work done under his supervision on a fixed rig located on the Shelf. "His work furthered the rig's operations and was in the regular course of the extractive operations on the [Shelf]. *But for those operations,* he would not have been in the helicopter. His death, therefore, occurred 'as a result of operations' as required by the OCSLA." *Id.* at 951 (emphasis added). Barger likewise would not have been killed in a helicopter crash in the Gulf of Mexico "but for" the fact that he was employed to transport eleven workers to a fixed platform on the Shelf. His work furthered mineral exploration and development activities and was in the regular course of such activities.

With respect to the second condition for OCSLA coverage, the term "employer" means "an employer any of whose employees are employed in [operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting . . . the natural resources . . . of the outer Continental Shelf]." 43 U.S.C. § 1333(b)(2). Unlike the employer in *Stansbury,* Barger's employer, Petroleum Helicopters, was not itself engaged in mineral operations. However, helicopter transportation of men and equipment from the mainland to the offshore rigs and back plays an important role in "developing" the Shelf. This transportation is an "operation conducted . . . for the purpose of" natural resource development. Helicopter pilots involved in these operations perform the same function with respect to resource development whether employed directly by a producer or by a separate contractor, and should not be treated differently on the basis of who their immediate employer is. We decline to inject another element of inconsistency into an area already beset by more than its fair share of incongruous results.[4]

Aside from the fact that this case involves an employer and employee, the only kind of claim to which the compensation remedy applies, there is another important distinction between Barger's claim and the claim in *Smith.* The OCSLA compensation coverage provision already quoted is expansive. It extends to *every* injury or death "occurring as a result of operations . . . for the purpose of exploring for, developing, removing, or transporting . . . natural resources." 43 U.S.C.A. § 1333(b). The state law extension clause, however, is considerably narrower, providing *only* for the application of state law to "the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon." 43 U.S.C. § 1333(a). Thus

---

**4.** *See generally* Robertson, *Injuries to Marine Petroleum Workers: A Plea for Radical Simplification,* 55 Tex.L.Rev. 973, 973 (1977) ("Since the oil industry went offshore, the legal system has struggled to produce a body of injury law that is rational, fair, internally consistent, and acceptably productive of safety incentives. The result has been chaos.") (footnote omitted).

state law is made applicable only to workers in certain areas and not to all employees engaged in mineral development, while the compensation statute reaches any employee killed or injured while exploiting the Shelf's resources.

We, therefore, hold that Barger's exclusive remedy against his employer was LHWCA compensation.[5] The district court's judgment is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.

JOHN R. BROWN, Circuit Judge, dissenting:

To the dual holding[1] that the helicopter was not a "vessel" and Barger, its pilot, was not a "seaman", I must respectfully dissent.

To narrow the point of difference, I wish to make clear the extensive areas in which I am in full agreement with Judge Rubin's scholarly analysis. Without a doubt, 43 U.S.C. § 1333(b) of the Outer Continental Shelf Lands Act (OCSLA) brings into play § 933(i) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) which prescribes the exclusive remedy for injury and death cases by the Act. I quite agree that Barger's death was the "result of operations conducted on the Outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting ... the natural resources ... of the Outer Continental Shelf ...", 43 U.S.C. § 1333(b), and that his employer, Petroleum Helicop-

ters, Inc., was engaged in such operations in performing the essential service of transporting men and equipment from the mainland to the offshore rigs.

At the same time, I agree the case is not controlled by the local law of the adjacent state (Louisiana) as "surrogate" federal law under the OCSLA, 43 U.S.C. § 1333(a)(2)(A). See text accompanying n. 25, 684 F.2d at 1109. *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969).[2] I also agree that the Kolb claim against the third party in *Smith* for the death of a helicopter pilot in waters off the Outer Continental Shelf was a maritime claim within the jurisdiction of the admiralty. 684 F.2d 1111–12.

And I embrace wholeheartedly the Court's conclusion that the suit by the helicopter owner in the Kolb claim of *Smith* for loss of a helicopter was within the admiralty jurisdiction. *Id.* at 1112. All of this means that for the death of Barger the Longshoremen's Act is the exclusive remedy against the employer, Petroleum Helicopters, Inc., *unless* he was "... a master or member of the crew of [a] vessel ...." 43 U.S.C. § 1333(b)(1).

This dramatizes the narrow, but significant, difference in our views. The Court having held (i) in the Kolb third party death action that the claim under DOHSA was within the admiralty and it was so maritime

---

**5.** The district court held in the alternative that, even if Barger were covered by the LHWCA, section 905(b) of that act gives a covered employee the right to bring an action against the "vessel owner" for negligence. Citing *Smith v. M/V Captain Fred,* 546 F.2d 119 (5th Cir.1977), the court noted that the "circumstances that the vessel owner and the employer are the same entity does not preclude such an action." However, section 905(b) is simply irrelevant here unless a helicopter is a "vessel." We have concluded that it is not. *See* text *supra* and *Smith,* 684 F.2d at 1112–13. Therefore, workers' compensation remains Barger's sole remedy against his employer.

**1.** The dual determination was based, in effect, on the almost contemporaneous holding of the Court as to the Smith claim in *Smith v. Pan Air Corporation,* 684 F.2d 1102, 1112, n. 39 (5th

Cir.1982). Of necessity, this dissent attacks that determination. Instead of concurring specially because of a decision binding on me until altered by the Court en banc, I am dissenting, since with the filing of this dissent I will seek formally rehearing en banc, F.R.A.P. Rule 35, of the instant case which will inevitably bring into question the correctness of the *Smith* decision.

**2.** The Court states:

> Unlike both Monk and the workers considered in *Rodrigue,* the helicopter pilot was engaged in a maritime-type function, transporting persons over the seas.
>
> We hold, therefore, that admiralty jurisdiction over Kolb's claim against nonemployer third parties is not ousted by section 1333(a) of the OCSLA.

684 F.2d at 1111–12 (note omitted).

as to be beyond the reach of adjacent surrogate law, 43 U.S.C. § 1333(a)(2)(A); and having held (ii) in the claim for the owner's loss of the helicopter that the helicopter was engaged "in a maritime-type function, transporting persons over the sea", 684 F.2d at 1111, because the aircraft was "being used in place of a vessel to ferry personnel and supplies to and from offshore drilling structures, . . ." and this bore ". . . the type of significant relationship to traditional maritime activity . . . necessary to invoke admiralty jurisdiction . . .", *Id.* at 1112, the case suddenly loses its admiralty character by the interposition of the Longshoremen's Act.

It is no answer that this is what Congress has prescribed since the LHWCA provides itself that seamen are excluded. The helicopter is doing what a vessel would ordinarily do—transport persons and property to and from the mainland and the offshore structure. The pilot is doing what the master and crew of a vessel would do, namely, operate the craft. Each activity is maritime and maritime related. Each meets the exclusions and principles set forth in *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Injury or loss to each in the OCSLA waters is within the admiralty. The factor which makes each within the admiralty is the function and purpose of the use of the craft. All that is lacking is a "vessel" in the usual traditional sense of a thing which can float on or in water to carry persons or things from one place to another.

But the normal physical characteristics to constitute an object a "vessel" have never deterred the Supreme Court or this Court from finding unusual, nontraditional, odd, nonmaritime structures to be "vessels", and the person serving to fulfill the mission of such structures to be seamen under the Jones Act.

The classic case is Judge Wisdom's celebrated decision in *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959). There, following significant Supreme Court decisions, we held an oil field "roustabout" who did not know how to, or what was meant by, the ability to "hand, reef and steer," to be a Jones Act seaman for injuries received while a floating submersible rig was made fast to the bottom of the bay by jack-up legs raising the deck of the drilling barge way above the level of the water. At the time of the injury the drilling platform was not afloat. It was hard aground. The drilling barge could not move. The only relation it had to the sea was its past— when it was towed to a new location—or, its future—when it would again be towed to another location.

Equally spectacular was the decision in *Gianfala v. Texas Co.,* 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955). Gianfala and his crew members slept ashore in an oilfield camp and worked aboard a drilling barge which was resting on the bottom of the bay at the time of the injury. The Court held Gianfala to be a seaman within the scope of the Jones Act. Even more spectacular was *Grimes v. Raymond Concrete Pile Co.,* 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958) in which the contractor was building a "Texas tower" radar station for location in the North Atlantic to be permanently affixed to the floor of the ocean. After the tower was towed to its offshore site, Grimes did only piledriving work. He drowned when he fell out of a life ring used to carry him from a tug to the tower. The Supreme Court reversed the First Circuit and held that the "petitioner's evidence presented an evidentiary basis for a jury's finding whether or not the petitioner was a member of the crew of any vessel" to thus circumvent the equivalent of LHWCA coverage under the Defense Bases Act. *Id.* at 253, 78 S.Ct. at 688.

Courts of Appeals and District Courts have extended *Robison* to strange sorts of things to find them to be a "vessel" and the injured person a seaman,[3] and the so called floating submersible drilling barges are invariably hard aground, incapable of any

---

**3.** *Nelson v. United States,* 639 F.2d 469 (9th Cir.1980) (a wave suppressor, an aquatic barrier erected in the water to protect boats at the Coast Guard station from heavy waves which is permanently affixed to the sea floor held to be a vessel and the decedent, a piledriver, was a seaman within the Jones Act); *Guidry v. South Louisiana Contractors,* 614 F.2d 447 (5th Cir.1980) (elevated boom of a large dragline was a vessel; case remanded for jury determination whether injured party was Jones Act seaman); *Hicks v. Ocean Drilling & Exploration Co.,* 512 F.2d 817 (5th Cir.1975) (submersible oil storage facility resting on the bottom of the Gulf held to be a vessel and plaintiff a seaman); *Brinegar v. San Ore Construction Co., Inc.,* 302 F.Supp. 630 (E.D.Ark.1969) (fuel tank pontoon vessel capsized at time of accident held to be a vessel and plaintiff a Jones Act seaman).

movement—maritime or otherwise.[4] As a matter of physical, operative fact they are just as land-bound, nonmaritime as the fixed raised drilling platform over which it is uncontradicted that none is a vessel.

The upshot of these decisions for our case is that because the helicopter was regularly operated in the transportation of persons and property to and from the mainland and the offshore structures, it was engaged in maritime activities so that the loss of the helicopter and the death of the pilot were a maritime tort within the jurisdiction of the admiralty. It is maritime because of the nature of the work it regularly performed—the transportation of persons and property. This is made positive by the Court's treatment of the pilot's (*Kolb's*) claim. The Court emphasized that "his duties constantly carried him back and forth above the high seas over the outer Continental Shelf." 684 F.2d at 1111. Disregarding the relationship of the death claim to the OCSLA and the acknowledged separate jurisdiction under DOHSA, the Court went on:

> Even apart from this 'special treatment' accorded airplane crash victims, there would still be admiralty jurisdiction over Kolb's accident, as we show below in regard to Petroleum Helicopters' property claim arising from the same accident. *See* Part IIC *infra.*

*Id.* And after stating in Part IIC that the "logic of *Executive Jet* appears to require extension of admiralty jurisdiction to non-death claims arising on the high seas if the aircraft flight has the essential maritime nexus," *Id.* at 1112, the Court eliminating the "if", concluded:

> Therefore, both the locality and maritime nexus requirements being met, we hold that the *Petroleum Helicopters* claim, like the *Kolb* death claim, may be brought in admiralty. *Id.*

To the Court's *quaere, Id.* at 1113, n. 41, the record in this case and the trial court's factual findings clearly reflect that the amphibious helicopter here come within the broad, virtually indefinable *Robison* definition of a special purpose craft.[5] The judge found that this amphibious helicopter was specially designed and built not only to take off and land on water but also to taxi on the water. It could move under its self-propulsion on the water to position itself for the loading or unloading of cargo or passengers. He characterized the craft as one designed to function as a crew boat without which the gigantic offshore oil industry's maritime operations, *see Boudreaux v. American Workover, Inc.,* 680 F.2d 1034 (5th Cir., 1982) (en banc), could not function. Indeed this seems to have been the sole function of this helicopter.[6]

More than that the helicopter literally met the Congressional definition that "any artificial contrivance . . . capable of being used, as a means of transportation on water" constitutes a vessel.[7] 684 F.2d at 1113, n. 40.

---

4. Submersible drilling barge cases are legion and invariably involve injuries occurring while the drilling barge is fixed on the ocean floor and not floating or in movement. *See Daughdrill v. Diamond M. Drilling Co.,* 447 F.2d 781 (5th Cir.1971); *Neill v. Diamond M. Drilling Co.,* 426 F.2d 487 (5th Cir.1970); *Producers Drilling Co. v. Gray,* 361 F.2d 432 (5th Cir. 1966); *Harney v. William M. Moore Building Corp.,* 359 F.2d 649 (2d Cir.1966); *Clary v. Ocean Drilling and Exploration Co.,* 429 F.Supp. 905 (W.D.La.1977); *McNeese v. An Son Corp.,* 334 F.Supp. 290 (S.D.Miss.1971); *McCarty v. Services Contracting Inc.,* 317 F.Supp. 629 (E.D.La.); *Robichaux v. Kerr McGee Oil Industries, Inc.,* 317 F.Supp. 587 (W.D.La.1970); *Rogers v. Gracey-Hellums Corp.,* 331 F.Supp. 1287 (E.D.La.1970); *Hebert v. California Oil Co.,* 280 F.Supp. 754 (W.D.La. 1967); *Ledet v. U.S. Oil of Louisiana, Inc.,* 237 F.Supp. 183 (E.D.La.1964); *Oliver v. Ocean Drilling & Exploration Co.,* 222 F.Supp. 843 (W.D.La.1963); *Guilbeau v. Falcon Seaboard Co.,* 215 F.Supp. 909 (E.D.La.1963).

5. It must be emphasized that a *Robison* vessel determination does not necessarily or automatically mean Jones Act status, so the question is broader than: "Is the injured worker a Jones Act seaman?" *See Dugas v. Pelican Construction, Co.,* 481 F.2d 773 (5th Cir.1973) (not a Jones Act seaman but entitled to seaman's warranty of seaworthiness).

6. The Supreme Court in *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 619, n. 2, 98 S.Ct. 2010, 2011, n. 2, 56 L.Ed.2d 581, 583, n. 2, said "[t]he District Court bottomed admiralty jurisdiction on a finding that the helicopter was the functional equivalent of a crewboat. The ruling has not been challenged in this Court." (citation omitted).

7. Since we are dealing directly with the usage of not only the LHWCA but also more recently the 1953 OCSLA, 43 U.S.C. § 1333(c)(1) as amended September 18, 1978, 43 U.S.C. § 1333(b)(1), the Court's explanation, 684 F.2d at 1113, n. 40, not only ignores these historical

Whatever the meaning of the full text of 49 U.S.C. § 1509(a) rather than the Court's paraphrase of it, 684 F.2d at 1113, the fact is that in very recent actions Congress has definitely included seaplanes (including helicopters) within the meaning of the term "vessel". In the major overhaul of the International Regulations for Preventing Collisions at Sea, 33 U.S.C. § 1601 *et seq.* (1977), the Congress in 1977 did several significant things. It repealed the long standing "Rules of the Road." It provided for a proclamation by the President and the promulgation of the International Regulations for Preventing Collisions at Sea (International Rules).[8]

33 U.S.C. § 1601(1) leaves no doubt that all kinds of seagoing aircraft are included within the term "vessel". It states:

'vessel' means every description of watercraft, including nondisplacement craft and seaplanes, used or capable of being used as a means of transportation on water. . . .

A helicopter comes within the statutory definition of a "nondisplacement craft" and certainly fits the qualification of a craft "used or capable of being used as a means of transportation on water." *Id.* As a statutorily defined "vessel", a helicopter is also subject to the elaborate system set up in 33 U.S.C. § 1608 for civil penalties. There, investigative, enforcement and comprehensive measures are provided, including liability of an operator of a vessel and an *in rem* remedy against the craft.

Whatever Congress had or could have had in mind regarding the term "vessel" in 1920

when it first enacted the Jones Act, it is now clear in 1982 and has been ever since 1977 that Congress has no doubts. Congress means to include any and all kinds of seagoing aircraft within the term "vessel", with the sole qualification that the craft be used *or capable of being used* for transportation on or over international waters, which these clearly were, or other waters over which the United States has jurisdiction.

One final note on the term "vessel". The Court stresses that in *Robison* we were concerned with "special purpose structures" which are designed to float and be towed "across water to the drilling site despite their incapacity for *self-propulsion.*" 684 F.2d at 1113. Wave barriers permanently affixed to the sea floor, *Nelson,* 639 F.2d 469, the elevated boom of a dragline, *Guidry,* 614 F.2d 447, and a submersible oil storage facility, *Hicks,* 512 F.2d 817, and the "Texas Tower" for radar defense of the nation, *Grimes,* 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737, hardly fit that category.

Nor does fidelity to the principles of *Robison* require that the flexible maritime law's concern for those who go down to sea, see *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (following *Moragne* )—whether in ships or today's version of the ship's equivalent—should be denied effectuation of the admiralty remedy which Kolb and all other helicopter pilots, including Barger, have, because the thing—the helicopter—whose use for substantial maritime purposes gives the

---

facts (plus the substantial 1972 amendments to the LHWCA) but also this Court's express conclusion that we must determine what Congress meant about a matter on which it could not have thought because of technological non-existence. For example, discussing the technological advances made since Congress enacted COGSA, this Court has stated:

Our principal task in this case is to determine what Congress would have thought about a subject about which it never thought or could have thought and one about which we have never thought nor any other Court has thought. Technology has created a maritime transportation system unlike any which was in existence in 1936 when Congress enacted COGSA. (note omitted).

*Wirth Ltd. v. S/S ACADIA FOREST and LASH Barge,* 537 F.2d 1272, 1276 (5th Cir.1976).

The question remains then, what did Congress mean in 1953 when it enacted § 4(b)(1) of the OCSLA, the statute which cuts off the maritime claim for the death of the pilot. *Moragne*

*v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

**8.** The International Rules, see 33 U.S.C. § 1602 number 1 through 38.

Rule 3(a) states that:

(a) The word 'vessel' includes every description of water craft, including nondisplacement craft and seaplanes, used or capable of being used as a means of transportation on water.

Rule 3(e) states that:

(e) The word 'seaplane' includes any aircraft designed to manoeuvre on the water.

Rule 31 reflects peculiar concern with seagoing aircraft:

Where it is impracticable for a seaplane to exhibit lights and shapes of the characteristics or in the positions prescribed in the Rules of this Part she shall exhibit lights and shapes as closely similar in characteristics and position as is possible. (emphasis supplied).

controversy the prized characterization of a maritime claim, is not a vessel.[9]

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

Before BROWN, RUBIN and REAVLEY, Circuit Judges.

PER CURIAM:

The Petition for Rehearing is DENIED and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16) the Suggestion for Rehearing En Banc is also DENIED.

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge, with whom POLITZ and JOHNSON, Circuit Judges, join, dissenting:

For the reasons set forth in my dissent to the panel opinion, I dissent to the failure of the Court to grant rehearing en banc.

TATE, Circuit Judge, dissenting from denial of Suggestion for Rehearing En Banc:

I join Judge Brown in dissenting from the denial of the application for en banc rehearing. Without definitely concluding now that I would reach the conclusions expressed by Judge Brown in his dissent to the panel opinion, I feel that they raise concerns of sufficient import to warrant full consideration by the entire Court on this issue of everyday importance to workers servicing our offshore oil industry.

---

**9.** That ascribing vessel status to a helicopter leaves some legal problems unanswered, *see* 684 F.2d at 1114 (limitation of liability, etc.), is no deterrent to the admiralty's adaptability. Recall, for example, that in the boundless *Sier-* *acki* claims, founded on traditional seamen's work, longshoremen never received maintenance and cure. *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).