**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 21, 2009

Charles R. Fulbruge III
Clerk

No. 08-30086

THOMAS J ALLEMAN, Etc

Plaintiff

v.

OMNI ENERGY SERVICES CORPORATION

Defendant - Third Party Plaintiff -
Appellant

AIG INSURANCE COMPANY

Third Party Plaintiff - Appellant

v.

W & T OFFSHORE INC

Third Party Defendant - Appellee

_____

MARK R PARKER, Etc: ET AL

Plaintiffs

v.

OMNI ENERGY SERVICES CORPORATION

Defendant- Third Party Plaintiff -
Appellant

AIG INSURANCE COMPANY

Third Party Plaintiff - Appellant

v.

W & T OFFSHORE INC

Third Party Defendant - Appellee

_____

RONALD LEE BART FONTENOT; MARY EVE FONTENOT

Plaintiffs - Appellants

v.

ERNIE DALE SMITH

Defendant - Appellee

OMNI ENERGY SERVICES CORPORATION; AIG INSURANCE COMPANY

Defendants - Third Party Plaintiffs
- Appellants - Appellees

v.

W & T OFFSHORE INC

Third Party Defendant - Appellee

_____

SHARON GAYLE HEBERT, Natural Tutrix on Behalf of Ariel Lynn Hollier

Plaintiff - Appellant

v.

ERNIE DALE SMITH

Defendant - Appellee

OMNI ENERGY SERVICES CORPORATION; AIG INSURANCE COMPANY

Defendants - Third Party Plaintiffs
- Appellants - Appellees

v.

W & T OFFSHORE INC

Third Party Defendant - Appellee

_____

BRIAN LEE HOLLIER

Plaintiff - Appellant

v.

ERNIE DALE SMITH

Defendant - Appellee

OMNI ENERGY SERVICES CORPORATION; AIG INSURANCE COMPANY

Defendants - Third Party Plaintiffs
- Appellants - Appellees

v.

W & T OFFSHORE INC

Third Party Defendant - Appellee

———————————

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-2622
USDC No. 2:06-CV-2621
USDC No. 2:06-CV-2620

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The petition for rehearing is DENIED in part and GRANTED in part as reflected in the substitute opinion filed today. We withdraw our previous opinion and substitute the following:

In this appeal, we must determine difficult questions of applicable law following a tragic helicopter accident in the Gulf of Mexico. The two key issues before us are (1) whether a contract for helicopter services to oil platforms is by its nature a maritime contract, and (2) where to draw the line between the Outer Continental Shelf Lands Act ("OCSLA") and the Death on the High Seas Act ("DOHSA"). Bert Hollier ("Hollier") and other passengers of the helicopter sued the company that operated the helicopter, Omni Energy Services Corp. ("Omni"); Omni then sought indemnity from W&T Offshore, Inc. ("W&T"), which operated the oil platform and had contracted with Omni to fly employees to its platforms. The district court granted summary judgment in favor of W&T, finding that a contract for helicopter services was not a maritime contract, and partial summary judgment in favor of Omni, finding that DOHSA applied to Hollier's tort claims because the death occurred after Hollier fell into the ocean and floated there for more than two hours. We affirm the district court's judgment on the maritime contract issue and reverse and remand on the DOHSA issue.

## FACTS AND PROCEEDINGS

Omni and W&T had a general contract setting out the terms and conditions under which Omni would provide services to W&T. The contract includes a mutual indemnity clause, under which each company indemnifies the other against claims made by its employees. The contract also has a choice of

4

law clause, stating, "The general maritime law of the United States shall govern this Contract." In a separate letter agreement, Omni agreed to provide "certain aircraft services in accordance with the [general contract]." This letter agreement lays out the details of the provision of services.

Pursuant to the letter agreement, on December 17, 2004, an Omni helicopter piloted by Omni employee Ernie Smith was flying three W&T subcontractors between W&T offshore platforms. Smith was landing the helicopter on the helipad, but a boat landing stored on or near the helipad made it impossible for the passengers to exit. Smith then attempted to move the helicopter, but in doing so, the main rotor struck the boat landing. The helicopter skidded around the helipad, then fell into the Gulf of Mexico. Passengers Thomas Alleman and Mark Parker were injured. The third passenger, Hollier, floated in the water for two hours and died of a heart attack while he was being rescued.

In the district court, several cases were combined to create this consolidated action. On several cross-motions for summary judgment, the district court held that: (1) the contracts between Omni and W&T are governed by OCSLA, not maritime law, and under OCSLA, Louisiana law, and specifically the Louisiana Oilfield Indemnity Act ("LOIA"), applies, making the indemnity provisions invalid; and (2) Hollier's tort claims are governed under DOHSA, not OCSLA.

Omni now appeals, arguing that the contract should be governed by maritime law, which makes the indemnity provision valid. Hollier's heirs also appeal, arguing that OCSLA should govern Hollier's tort claims.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *Settlement Funding, LLC v. TransAmerica Occidental Life Ins. Co.*, 555 F.3d 422, 424 (5th Cir. 2009). Summary judgment is appropriate where "there is no

genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## DISCUSSION

### A. Indemnity and Contribution Claims

OCSLA extends the laws and jurisdiction of the United States to the seabed and artificial islands on the outer Continental Shelf, including offshore platforms. 43 U.S.C. § 1333(a)(1). The laws of the adjacent state also apply, to the extent they are not inconsistent with federal law. *Id.* § 1333(a)(2)(A). The state adjacent to the W&T platform involved in the helicopter accident is Louisiana, so Louisiana law would apply if OCSLA governs the contract. It is undisputed that if OCSLA applies, LOIA would bar the indemnity provision of Omni's contract. *See* LA. REV. STAT. § 9:2780. Therefore, the dispositive issue is whether OCSLA applies, as opposed to maritime law.

We use a three-part test to determine whether OCSLA applies:

(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artific[i]al structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.

*Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990). The parties do not dispute that the controversy arose on an offshore platform and that Louisiana law is consistent with federal law.[1] The sole issue, then, is whether maritime law applies to the contract of its own force.[2] If so, OCSLA would not apply.

---

[1] As no appeal was taken on these issues, we express no opinion as to whether parts 1 and 3 of the test were actually met in this case.

[2] The contract contains a choice of law provision stating that maritime law will govern, but parties cannot choose to be governed by maritime law when OCSLA applies. *See Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co., Inc.*, 448 F.3d 760, 772 & n.8 (5th Cir. 2006).

Determining whether a contract is maritime is a well-trod but not altogether clear area of the law. *See Hoda v. Rowan Cos., Inc.*, 419 F.3d 379, 380 (5th Cir. 2005) (discussing whether our case law offers "the soundest jurisprudential approach" to this area of law); *Planned Premium Servs. of La., Inc. v. Int'l Ins. Agents, Inc.*, 928 F.2d 164, 165 (5th Cir. 1991) ("The waters become murky when we seek the precise parameters of a maritime contract."); *Domingue v. Ocean Drilling & Exploration Co.*, 923 F.2d 393, 393–94 (5th Cir. 1991) ("Once more we embark on a voyage through the familiar marshland area of the law set aside for classifying the oil and gas exploration services contract as wet or dry."). Because the general contract does not provide for specific work to be done, it and the letter agreement are considered as a single contract. *See Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 315 (5th Cir. 1990).

In ascertaining whether that contract is a maritime contract, we look to the "nature and subject-matter" of the contract and ask whether it has "reference to maritime service or maritime transactions." *New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. 1, 26–27 (1870); *see Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 US. 603, 611 (1991) ("[T]he nature and subject-matter of the contract at issue should be the crucial consideration in assessing admiralty jurisdiction." (internal quotation omitted)). The contract need not, however, be purely one on the high seas. In a "maritime case about a train wreck," the Supreme Court said that "[t]o ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute, as we would in a putative maritime tort case." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18, 23 (2004). "Instead, the answer depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." *Id.* at 24 (internal quotation and alteration omitted).

In this circuit, we utilize the two-part inquiry laid out in *Davis & Sons*, 919 F.2d 313, to determine whether a contract is maritime. We look both to the "historical treatment in the jurisprudence" as well as to six fact-specific factors:

> 1) what does the specific work order in effect at the time of injury provide? 2) what work did the crew assigned under the work order actually do? 3) was the crew assigned to work aboard a vessel in navigable waters; 4) to what extent did the work being done relate to the mission of that vessel? 5) what was the principal work of the injured worker? and 6) what work was the injured worker actually doing at the time of injury?

*Id*. at 316. Analyzing these factors, it is clear that Omni was instructed to fly workers to an oil platform, and that the workers were simple passengers on their way to the platform. We are left, however, with the central question of whether a contract to transport workers to an oil platform by helicopter is a maritime contract. Is the "nature and subject-matter" of transportation by helicopter a "maritime service"?

Omni points us to tort cases where admiralty jurisdiction applies to helicopter accidents that occur over water. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 218–219 (1986). In *Tallentire*, the Court said that "admiralty jurisdiction is appropriately invoked here under traditional principles because the accident occurred on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity." *Id*. "Although the decedents were killed while riding in a helicopter and not a more traditional maritime conveyance, that helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an 'island,' albeit an artificial one, to the shore." *Id*. at 219. Similarly, this court has held that "[t]he crash of the deceased's helicopter, while it was being used in place of a vessel to ferry personnel and supplies to and from offshore drilling structures, bears the type of significant relationship to traditional maritime activity which is necessary to invoke admiralty jurisdiction." *Ledoux v.*

*Petroleum Helicopters, Inc.*, 609 F.2d 824, 824 (5th Cir. 1980). So, helicopter transport to offshore platforms bears a "significant relationship to a traditional maritime activity" and essentially replaces a "function traditionally performed by waterborne vessels."

But the tests for maritime *contract* law and maritime *tort* law have long been different. *See State Indus. Comm'n of N.Y. v. Nordenholt Corp.*, 259 U.S. 263, 271 (1922). Maritime jurisdiction covers torts that occur on the high seas and bear a significant relationship to traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268 (1972). Conversely, maritime contract law applies based on the nature and character of the contract, rather than looking to where it occurred. *Norfolk*, 543 U.S. at 24. In *Executive Jet*, the Supreme Court specifically addressed both whether maritime tort law and other maritime law applied to aircraft. 409 U.S. 249. The Court stated clearly that "in contexts other than tort, Congress and the courts have recognized that . . . aircraft are not subject to maritime law." *Id.* at 270; *see also id.* at 261–62 (listing the numerous ways in which Congress and the courts have excluded aircraft from typical maritime law). "Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage." *Id.* at 270. These rules and concepts "are wholly alien to air commerce, whose vehicles operate in a totally different element, unhindered by geographical boundaries and exempt from the navigational rules of the maritime road." *Id.* "The matters with which admiralty is basically concerned have no conceivable bearing on the operation of aircraft, whether over land or water." *Id.* This court has also clearly held that helicopters are not "vessels" for purposes of maritime commerce, even if they fly

9

over the sea. *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337, 339–40 (5th Cir. 1982).

The contract at issue was to provide helicopters and other aircraft to ferry workers between platforms and the shore. If those aircraft crash on the high seas, maritime tort jurisdiction applies. *Tallentire*, 477 U.S. at 219. But helicopters and other aircraft are not generally governed by maritime law in their normal operations. Indeed, as the subject matter of this contract is aviation services, which are not governed by maritime law, we hold that a contract to ferry workers to offshore oil platforms is not a maritime contract. Because federal maritime law does not apply of its own force, *see PLT*, 895 F.2d at 1047, OCSLA, and thus LOIA, applies, rendering the indemnity provision of the contract void and unenforceable. LA. REV. STAT. § 9:2780.

## B. Tort Claims

The district court held that DOHSA governed Hollier's tort claims. DOHSA provides a right of action for any death occurring on the high seas beyond a marine league from the shore, or, in the case of a commercial aviation accident, more than 12 nautical miles from shore. *See* 46 U.S.C. § 761 (2000).[3] OCSLA applies to accidents "actually occurring" on oil platforms, *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 366 (1969), and applies state law as surrogate federal law on those platforms. 43 U.S.C. § 1333.

"[I]n *Rodrigue*, the Court held that an admiralty action under DOHSA does not apply to accidents 'actually occurring' on these artificial islands, and that DOHSA therefore does not preclude the application of state law as adopted federal law through OCSLA to wrongful death actions arising from accidents on offshore platforms." *Tallentire*, 477 U.S. at 217–18 (citing *Rodrigue*, 395 U.S. at

---

[3] DOHSA was amended in October 2006. *See* 46 U.S.C. § 30301. Because the events at issue in this case occurred in 2004, we apply the version of DOHSA that was in effect at the time.

366). This is because "Congress did not intend . . . that these island-platforms be within admiralty's jurisdiction." *In re Dearborn Marine Serv., Inc.*, 499 F.2d 263, 272–73 (5th Cir. 1974).

The helicopter was attempting to land on the deck of the oil platform; the pilot then tried to reposition it, and in so doing hit a boat landing; after hitting the helipad and spinning wildly, the helicopter fell into the sea with its occupants. This accident "actually occurred" on the oil platform itself and OSCLA therefore applies. It does not impact our analysis that Hollier fell into the sea after the accident occurred on the platform. *See Smith v. Pan Air Corp.*, 684 F.2d 1102, 1110 (5th Cir. 1982) ("[W]e have applied OCSLA and, consequently, state law, to incidents in which platform workers who were the victims of torts originating on these artificial islands were not actually injured or killed until they fell, jumped, or were pushed into the surrounding seas.");[4] *Dearborn*, 499 F.2d at 273 ("Congress did not intend that application of state law necessarily should cease at the physical boundaries of the platform. The same concerns may be equally applicable to accidents fortuitously consummated in the surrounding sea.").

## CONCLUSION

We AFFIRM the district court's grant of partial summary judgment in favor of W&T finding that OCSLA applies to the contractual indemnity and contribution claims. We REVERSE the district court's grant of partial summary judgment in favor of Omni finding that DOHSA governs Hollier's tort claims,

---

[4] *Smith* applied maritime law to a helicopter pilot's tort claims for a helicopter crash that occurred over the high seas. 684 F.2d at 1112. In *Smith*, a platform crane and its crane ball extended out over the Gulf of Mexico; the helicopter collided with the crane ball and crashed into the Gulf. *Id.* at 1105. *Smith* relied on two facts to find maritime jurisdiction: (1) that the accident occurred on or over the high seas, rather than on the platform, and (2) that the decedent was a helicopter pilot engaged in a maritime-type function, rather than a platform worker. *See id.* at 1105, 1110–1111. Neither of these facts are present in this case, where the accident occurred on, or slightly over, the platform itself, and where the victim was a platform worker, rather than the helicopter pilot.

and REMAND this case to the district court for further proceedings consistent with this opinion.